STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
HARRIS & PETRONI, LTD.
417 West Plumb Lane
Reno, NV 89509
Telephone: (775) 786-7600
E-Mail: steve@renolaw.biz
Proposed Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| IN RE:<br>THE HOLDER GROUP SHARKEY'S, LLC, a Nevada limited liability company,<br><br>Debtor.<br>_____/ | Case No. 13-50844-btb<br>(Chapter 11)<br><br>**EMERGENCY MOTION FOR INTERIM APPROVAL OF USE OF CASH COLLATERAL BY DEBTOR AND GRANTING ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING TO APPROVE USE OF CASH COLLATERAL BY DEBTOR**<br>Hearing Date: OST Pending<br>Est. Time: 15 minutes<br>Set by: Judge Beesley |

     THE HOLDER GROUP SHARKEY'S, LLC, a Nevada limited liability company (the "Debtor"), by and through its proposed counsel, STEPHEN R. HARRIS, ESQ., of HARRIS & PETRONI, LTD., hereby submits its EMERGENCY MOTION FOR INTERIM APPROVAL OF USE OF CASH COLLATERAL BY DEBTOR AND GRANTING ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING TO APPROVE USE OF CASH COLLATERAL BY DEBTOR (the "Motion").

This Motion is made and based on the points and authorities below, the OMNIBUS DECLARATION OF HAROLD D. HOLDER, SR, IN SUPPORT OF FIRST DAY MOTIONS (the "Holder Declaration"), the papers and pleadings on file herein, judicial notice of which is respectfully requested, and any arguments of counsel entertained at any interim or final hearings on this matter.

## I.

## CONCISE STATEMENT OF RELIEF REQUESTED

1.  This concise statement of relief requested is made pursuant to Fed. R. Bankr. P. 4001(b)(1)(B). This Motion seeks entry of a proposed ORDER GRANTING EMERGENCY MOTION FOR INTERIM APPROVAL OF USE OF CASH COLLATERAL BY DEBTOR AND GRANTING ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING TO APPROVE USE OF CASH COLLATERAL BY DEBTOR (the "Emergency Order"), thereby approving an emergency interim basis for the Debtor's Cash Collateral Use, pursuant to Fed. R. Bankr. P. 4001(b) and LR 4001(b). This Motion further requests that the Court schedule a final hearing for the approval of the Debtor's Cash Collateral Use at least twenty (20) days hereafter.

2.  The Debtor's property consists of ten (10) parcels of land on which the Sharkey's Casino is located. Nevada State Bank ("NSB") is the first priority secured lender on the seven (7) parcels that actually contain the operating casino, and claims a security interest in all or substantially all of Debtor's real property, and personal property located therein, pursuant to that certain note and deed of trust originally entered into on April 16, 2004, between the Debtor and Great Basin Bank pursuant to which the Debtor procured a loan in the original principal amount of $2,000,000.00 (the "NSB Loan"). Great Basin Bank concurrently filed and recorded a form
HARRIS & PETRONI, LTD
ATTORNEYS AT LAW
417 WEST PLUMB LN.
RENO, NV 89509
775 786 7600

UCC-1 securing all fixtures and proceeds relating to same. Great Basin Bank was subsequently taken over by the Federal Deposit Insurance Corporation (FDIC) and NSB became the successor by purchase of all right, title and interest of the assets of Great Basin Bank. The Debtor is current in its payments to NSB, with a current approximate loan balance of $1,638,789.00.

3. See Horse 1, LLC, a Nevada limited liability company, claims a second priority security interest in the seven (7) parcels of Debtor's real property, and personal property located therein, pursuant to a note and deed of trust originally entered into as a line of credit with Northern Nevada Bank on May 17, 2004. The line of credit loan documents were modified several times over a period of time. Ultimately, Northern Nevada Bank was taken over by FDIC, with Nevada Security Bank as its successor in interest. Umpqua Bank became the successor in interest of Nevada Security Bank, and ultimately sold the note and deed of trust to See Horse 1, LLC in late 2012.

4. City National Bank, as successor in interest to Nevada Business Bank, also claims security interests in certain of the Debtor's real property, secured by deeds of trust encumbering two (2) of the remaining parcels owned by the Debtor. Additionally, NSB also possesses a loan secured by a UCC-1 Financing Statement in the approximate amount of $60,000.00, that is past due. Further, Nevada Bank & Trust, International Gaming Technology and PDS Gaming claim security interests in certain personal property, income and/or slot machines on the Debtor's premises. NSB is the primary secured lender on the portions of the real and personal property that produce income.

5. The Debtor cannot meet its ongoing postpetition obligations unless they have the immediate ability to use Cash on Hand, the Deposit Accounts and Post-Petition Cash. In the

absence of such use, immediate and irreparable harm will result to the Debtor, its Estate and its creditors, and will render an effective and orderly reorganization of the Debtor's business impossible. Debtor intends to use the cash collateral for Ordinary Operating Disbursements and in accordance with the Cash Forecast which will be filed with the Court prior to the hearing on the Motion.

6. The Cash Collateral Budget or Cash Forecast Budget for the Debtor allows for the Debtor's use of Cash Collateral in accordance with the Cash Forecasts, while preserving the Debtor's and the Lender's claims regarding the Cash Collateral. The proposed interim cash collateral use allows the Debtor to effectively operate and maintain its business during the Chapter 11 case and is essential to its effective reorganization.

7. As part of the Cash Forecasts and use of Cash Collateral in accordance with these Cash Forecast, Debtor will provide certain acknowledgments and agreements concerning the Lender's security interests in and liens on the Collateral, subject to an exception on Cash on Hand, Deposit Accounts and Post-Petition Cash.

8. As and for adequate protection of the Lenders' security interests in the Prepetition Collateral, the Debtor propose the following restrictions for its interim Cash Collateral use: (i) the Lender is granted Replacement Liens on all Collateral, and, except for Chapter 5 causes of action, on all Post-Petition Collateral to the extent of a diminution in value of its Prepetition Collateral; (ii) Debtor shall make adequate protection payments to the Lenders on behalf of the Lenders in an amount equal to minimum monthly interest only payments calculated at the non-default rate of interest, commencing May, 2013 estimated as follows:

NSB: 7.25% Interest Only Monthly Payment: $9,765.39

See Horse 1, LLC: 4.56% Interest Only Monthly Payment: $13,680.00

HARRIS & PETRONI, LTD
ATTORNEYS AT LAW
417 WEST PLUMB LN.
RENO, NV 89509
775 786 7600

4

9. Entry of the Emergency Order would only grant Debtor such authority until a final hearing can take place pursuant to Fed. R. Bnkr. P. 6003, whereas the final hearing would grant such authority under the terms of the proposed cash collateral use. Debtor seeks to use all Cash Collateral as provided for in Section 363 of the Bankruptcy Code.

## II.

## INTRODUCTION

10. On April 30, 2013 (the "Petition Date"), Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

11. Debtor continues to operate its businesses and manage its properties as Debtor and Debtor-In-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

12. No request has been made for the appointment of a trustee or examiner, and no official committees have yet been established in this case.

## III.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (M).

14. The basis for the relief sought herein are Sections 361 and 363 of the Bankruptcy Code, Fed. R. Bnkr. P. 4001(b) and 6003, and LR 4001(b).

15. Venue of Debtor's Chapter 11 case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.

## BACKGROUND

16. The Debtor operates a casino that includes a 138 slot operation, an independently

HARRIS & PETRONI, LTD
ATTORNEYS AT LAW
417 WEST PLUMB LN.
RENO, NV 89509
775 786 7600

operated sports book, and food and beverage service located in Gardnerville, NV.

## V.

## RELIEF REQUESTED

17. Debtor has an emergency need for use of the Cash Collateral in accordance with the Cash Forecast Budgets to be filed prior to the hearing on this matter, and request Court authorization on an emergency interim basis for such use in order to avert an immediate closure of its business, which requires use of all such Cash Collateral for operations. The Budget was formulated after review of Debtor's normal and ordinary course cash needs in the operation of its business. The Budget also includes the CMS International payroll detail, given the fact that the Cash Forecast Budgets disclose monies being paid to CMS International of $6,000.00 per week, which entity serves the management function for all the properties, including gaming oversight and reporting, human resources, financial reporting and insurance procurement and collections. The Budget detail also includes a breakdown for the budgeted CMS International expense invoices for the Property.

18. As of the Petition Date, the Debtor is informed and believes that the enterprise value of the Debtor's business as a going concern is more than the total amount owed under the Lenders' Notes. The Debtor believes that the enterprise value of the Debtor's business will not diminish provided the Debtor's business continues to operate in the ordinary course and expenditure of capital expenditures as proposed in the Budget, all gaming licenses and permits remaining in place, and present management remaining in place.

## VI.

## LEGAL ARGUMENT

19. Section 363(c) of the Bankruptcy Code provides that "[t]he trustee may not use,

HARRIS & PETRONI, LTD
ATTORNEYS AT LAW
417 WEST PLUMB LN.
RENO, NV 89509
775 786 7600

sell, or lease cash collateral under paragraph (1) of this subsection unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

20.　The term "cash collateral" is defined in Section 363(a) of the Bankruptcy Code as including the following:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use of occupancy of rooms and other public facilities in hotels, motels or other lodging properties subject to a security interest as provided in section 552 (b) of this title, whether existing before or after the commencement of a case under this title.                              11 U.S.C. § 363(a).

21.　If, pursuant to Section 363(c)(2)(A) of the Bankruptcy Code, an entity with an interest in cash collateral consents to that collateral's use, sale or lease, a debtor-in-possession may still be required to provide adequate protection to an entity with an interest in the cash collateral. Section 363(e) of the Bankruptcy Code provides, in pertinent part, as follows:

> (e)　Notwithstanding any other provision of this section, at any time, on any request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use sale, or lease as is necessary to provide adequate protection of such interest....
> 11 U.S.C. § 363(e).

22.     As applied to the cases at hand, NSB, See Horse 1, LLC, Nevada Bank & Trust, International Gaming Technology and PDS Gaming are the only parties with properly perfected security interests in purported Cash Collateral, although the exact nature of each parties' cash collateral interests is yet to be determined.  Moreover, Debtor's immediate use of Cash Collateral is essentially to its ongoing operations and ability to reorganize.  Most importantly, the proposed interim cash collateral use preserves the Debtor's and the Lender's claims regarding the Cash Collateral while allowing for its use to the benefit of all parties in interest.

23.     As such, the Court can and should grant Debtor the authority and approval to use Cash Collateral, first on an interim and emergency basis, and after further notice and hearing, on a final basis.

## VII.

## CONCLUSION

WHEREFORE, Debtor respectfully request that Court enter an order granting emergency interim approval of the Debtor's proposed interim use of cash collateral pursuant to Fed. R. Bnkr. P. 4001(b), and scheduling a final hearing for approval of the cash collateral use at least twenty (20) days hereafter.  Debtor also requests such other relief as is just and proper.

DATED this 7th day of May, 2013.

STEPHEN R. HARRIS, ESQ.
HARRIS & PETRONI, LTD.


/s/ Stephen R Harris
Proposed Attorneys for Debtor