STEFANIE T. SHARP, ESQ.
Nevada State Bar No. 8661
Robison, Belaustegui, Sharp & Low
A Professional Corporation
71 Washington Street
Reno, Nevada 89503
Telephone: (775) 329-3151
Facsimile:  (775) 329-7169
Email:      ssharp@rbsllaw.com

*Attorneys for Nevada State Bank*

## UNITED STATE BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | CASE NO.:   BK-N-13-50844-btb |
| THE HOLDER GROUP SHARKEY'S LLC, | **CHAPTER 11** |
| Debtor. | **NEVADA STATE BANK'S OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT** |
| | Hearing Date:  August 28, 2013<br>Hearing Time:  10:00 a.m.<br>Set By: Dkt. 58 |

_____/

  Secured Creditor Nevada State Bank by and through its counsel, Robison, Belaustegui, Sharp & Low, hereby files its Objection (the "Objection") to Debtor's Disclosure Statement (the "Disclosure Statement"), Dkt. 55.  This Objection is based upon the following points and authorities, any subsequent memorandum or declarations filed in support hereof, the pleadings and papers on file herein and the arguments of counsel at the hearing on this matter.

### I. RELEVANT FACTS AND BACKGROUND

  Nevada State Bank ("NSB") is the holder of the beneficial interest under 2 loans (the "NSB Loans") which are cross collateralized and cross-defaulted.  The NSB Loans are secured by a 1st priority security interest in the income generating real and personal property owned by the Debtor in Gardnerville, Nevada commonly known as the Sharkey's Nugget Casino (the "Casino") located at 1440 U.S. Highway 395 North, Garnerville, Nevada (the "Real Property").  The

collateral securing the NSB Loans includes: all improvements, fixtures and personal property associated with, or related to, the Real Property and Casino; and all of Debtor's gaming devices (as defined in NRS 463.0155), the associated equipment (as defined in NRS 463.0136) and all income and revenues generated therefrom (collectively the "FF&E").

Harold D. Holder, Sr. unconditionally guaranteed Debtor's payment of and performance under the NSB Loans.

A.    Information on Origination and Modification of NSB Loans.

At the time the NSB Loans were extended to Debtor by NSB's predecessor in interest, Great Basin Bank of Nevada ("Great Basin Bank"), the indebtedness was evidenced by, among other instruments, a Promissory Note in the original principal amount of $2,000,000.00 (the "Note") as well as well as a Business Loan Agreement both dated April 16, 2004. The Note calls for monthly payments of principal and accrued interest at a variable interest rate with all principal and accrued unpaid interest due and payable in full on April 19, 2024. The current amount of the monthly principal and interest payment due under the Note is $15,926.32.

After its origination, the terms of the documents evidencing the indebtedness were modified on several occasions. In connection with a modification in December of 2008, Debtor executed and delivered the Security Agreement to Great Basin Bank, granting Great Basin Bank the 1st priority security interest in the FF&E.

On April 17, 2009, Great Basin Bank was closed by the Nevada Financial Institutions Division ("FID"). FID appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. The FDIC entered into a purchase and assumption agreement with NSB to assume all of the deposits of Great Basin Bank as well as a portion of its loan portfolio, including but not limited to the loans at issue in this matter.

In 2011 the loan was restructured. Fifty-Nine Thousand Seven Hundred Ninety Thousand Dollars and Sixty-One Cents ($59,790.61) of the amount owed under the loan was restructured into a separate note (the "B Note"). The B Note was two cross-collateralized and cross-defaulted with the Note, and is secured by the same collateral, the Real Property and FF&E. The B Note called for all principal and accrued unpaid interest to be paid in full on January 19, 2012. The B

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

Note was modified on or about January 19, 2012, to extend the maturity date of the portion of the indebtedness of Debtor to NSB evidenced by the B Note to April 19, 2013 and to provide for monthly payments of principal and interest in the amount of $2,200.00.

B.    Adequate Protection and Reservation of Rights in Cash Collateral.

On June 13, 2013, Debtor and NSB entered into a Stipulation for Adequate Protection and Reservation of Rights in Cash Collateral, Dkt. 52, which was approved by the Court on June 24, 2013, Dkt. 59. At the June 13, 2013 hearing on Debtor's first day motions, this Court ordered that all briefing and argument regarding the respective rights of the Debtor and NSB in the gaming proceeds be addressed in connection with the hearing and briefing on confirmation of the plan.

## II. LEGAL DISCUSSION AND ARGUMENT

A.    Standard for Approval of Disclosure Statement.

A disclosure statement is required to contain "adequate information", which is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan." 11 U.S.C. §1125(a)(1).

Full disclosure is important so that parties "can cast an informed vote." *In re Scioto Valley Mrtg. Co.,* 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988). Not only must a disclosure statement contain adequate information, it cannot contain inaccurate, deceptive or misleading statements; "including false information is a more serious matter than a mere lack of information." *Computer Task Group, Inc. v. Brotby (In re Brotby),* 303 B.R. 177, 193, 194 (B.A.P. 9th Cir. 2003) (stating that "the use of misleading or false information in a disclosure statement may be so serious as to invalidate the voting by creditors as to a plan, requiring a new round of voting after necessary corrections to the disclosure statement are made").

The Ninth Circuit has held that a creditor has standing to object to the adequacy of the disclosure statement even if the inadequacy only affects another class and will not cause the creditor to change its vote because the creditor is "injured because he was denied the information

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

1   he might have used in persuading other creditors to vote against the plan." *Everett v. Perez (In Re*

2   *Perez)*, 30 F.3d 1209, 1217 (9th Cir. 1994).

3       B.      Debtor's Disclosure Statement Does Not Contain Adequate Information.

4           1.      *The Disclosure Statement Fails to Adequately Describe The Treatment of*
                    *NSB's Claims.*
5

6           Article IX, Sections 1A and 1B describe the proposed treatment of NSB's Claims.

7   Section 1A describes the treatment of the indebtedness of the Debtor to NSB evidenced by the A

8   Note and associated loan documents.  Section 1B describes the treatment of the indebtedness of

9
    the Debtor to NSB evidenced by the B Note and associated loan documents.  The following issues
10
    are not addressed or discussed:
11

12          1.      The effect of the proposed Plan on the terms and conditions in the loan
    documents which are not modified by the proposed treatment, for example financial covenants and
13   reporting requirements, insurance requirements, remedies on default, and payment of taxes and
    assessments.
14

15          2.      There is no analysis or explanation of how the proposed interest rate
    applicable to NSB's Claims was selected by the Debtor.
16

17          3.      The proposed treatment does not provide for NSB's recovery of its fees,
    costs, charges and expenses, including attorney's fees and costs, to which it is entitled under the
18   documents evidencing its claims as provided for in 11 U.S.C. §506(b).

19          4.      With respect to the proposed treatment of the Claim evidenced by the B
    Note and associated loan documents, the description in the Disclosure Statement does not contain
20   a disclosure of the date the proposed monthly plan payment is to be paid to NSB.

21      2.      *The Disclosure Statement Fails to Adequately Describe The Debtor's Ownership*
                *Structure and Relationships with Affiliates.*
22

23          a.      Ownership Structure.

24          The Disclosure Statement lacks any information or disclosure regarding the

25  Debtor's relationships with affiliates.   Article VIII, Section 6 of the Disclosure Statement

26  provides that one hundred percent of the membership interests of the Debtor are owned by The

27  Holder Group, LLC.  No information is given regarding the members or managers of the owner of
28

the Debtor.  In order to make an informed decision on the proposed Plan, creditors and interested

parties need to know who the person or persons are who own and control the Debtor.  Assuming

that The Holder Group, LLC is owned by persons and not entities, this person or persons have the

ability to select the manager of the Debtor and make the ultimate decisions on its business

activities.  Alternatively, if The Holder Group, LLC is owned by another entity or entities,

creditors are entitled to such additional information regarding the Debtor's ownership structure so

that the ultimate persons with decision making authority are disclosed.

                b.     <u>Affiliates.</u>

The Disclosure Statement lacks any information regarding the Debtor's affiliates.

In Article VIII, Section 5 of the Disclosure Statement The Holder Group Sundance, LLC and The

Holder Group, LLC are listed as having unsecured claims against the Debtor in the amounts of

$57,333.32 and $66,783.21, respectively.  There is no statement advising creditors that these

claims are associated with insider/affiliate debt, nor is the relationship between Debtor and The

Holder Group Sundance, LLC explained.

The Disclosure Statement provides that "CMS International" will continue to

provide "management services" and pay "reimbursable expenses" for the Debtor for a fee of

$6,000 per week with the caveat that the fee and expense reimbursement will be deferred if the

Debtor does not have enough cash flow to meet operating expenses and debt flow under the plan.

*See*, Disclosure Statement, p. 20, lines 11-14.  It is believed that CMS International is an affiliate

of the Debtor, but the Disclosure Statement lacks any information regarding the relationship

between Debtor and CMS International.

At the meeting of creditors in on June 3, 2013, Debtor's representatives disclosed

that Debtor has numerous related and affiliated entities, including The Holder Hospitality Group,

Inc. and The Holder Group Vendor Company, LLC.  The Disclosure Statement lacks any

1    discussion regarding these entities or the other affiliates of the Debtor.

2        3.    *The Disclosure Statement Lacks Pro Forma Projections.*

3        To establish financial feasibility, the disclosure statement *must include* detailed *pro forma*

4    projections demonstrating that the reorganized debtor will have the ability to make payments

5    under the plan.  At a minimum, the information should include: (i) income and expense data

6    showing the debtor's present and past performance and (ii) income and expense projections

7    detailing the debtor's expected future performance.  The information should be in chart form and

8    based on either audited or unaudited financial statements.  Information about the accounting and

9    valuation methods used for the projections must be clearly disclosed and explained – including a

10   discussion of all assumptions made.  In addition, net cash flow must be defined and calculated.

11   *See In re Cardinal Congregate I*, 121 B.R. 760, 767 (Bankr. S.D. Ohio 1990).

12       Debtor's Disclosure Statement lacks any such projections and simply attaches Profit and

13   Loss statements for the Debtor's business operations for the time period January 1 through April

14   30, 2013.  To establish financial feasibility a disclosure statement is required to include income

15   and expense projections detailing  the debtor's anticipated future performance.  The Disclosure

16   Statement fails to meet this requirement.

17   

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

6

**III. CONCLUSION**

NSB submits that Debtor's Disclosure Statement should not be approved as containing adequate disclosure unless it provides, at a minimum, a supportable projection of its income and expenses for the plan term, and corrects the discrepancies outlined above.

DATED this 12th day of August, 2013.

ROBISON, BELAUSTEGUI, SHARP & LOW
A Professional Corporation
71 Washington Street
Reno, Nevada  89503

By: _____
STEFANIE T. SHARP, ESQ.
*Attorneys for Nevada State Bank*

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

7

## CERTIFICATE OF SERVICE

Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of ROBISON, BELAUSTEGUI, SHARP & LOW, that I am over the age of 18 and not a party to the above-referenced case, and that on the date below I caused to be served a true copy of **NEVADA STATE BANK'S OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT** on all parties to this action by the method(s) indicated below:

    __X__    I hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court by using the ECF system which served the following parties electronically:

**STEPHEN R. HARRIS**
steve@renolaw.biz
*noticesbh&p@renolaw.biz*
*bhpclerk@renolaw.biz*
*jodie@renolaw.biz*
*ellie@renolaw.biz*
*norma@renolaw.biz*
***Attorneys for The Holder Group***
***Sharkey's, LLC***

**KAARAN E. THOMAS, ESQ.**
kthomas@mcdonaldcarano.com
mmorton@mcdonaldcarano.com
***Attorneys for See Horse I, LLC***

**RYAN J. WORKS, ESQ.**
rworks@mcdonaldcarano.com
kbarrett@mcdonaldcarano.com
bgrubb@mcdonaldcarano.com
***Attorneys for See Horse I, LLC***

**U.S. TRUSTEE - RN – 11**
USTPRegion17.RE.ECF@usdoj.gov
*U.S. Trustee*

**ANTHONY L. CARANO, ESQ.**
acarano@mcdonaldcarano.com
***Attorneys for See Horse I, LLC***

**AMY TIRRE, ESQ.**
amy@amytirrelaw.com
admin@amytirrelaw.com
  ***Attorneys for City National Bank, N.A.***

**AARON E DAVIS**
aaron.davis@bryancave.com;
kat.flaherty@bryancave.com;
brandy.mcmillion@bryancave.com;
leslie.bayles@bryancave.com
***On behalf of Creditor US FOODS, INC***

I declare under penalty of perjury that the foregoing is true and correct.

DATED: This 12th day of August, 2013.