| | |
|---|---|
| MCDONALD CARANO WILSON LLP<br>KAARAN E. THOMAS (NV Bar No. 7193)<br>100 West Liberty Street, 10th Floor<br>Reno, NV 89505-1670<br>Telephone:  (775) 788-2000<br>Facsimile:   (775) 788-2020<br>Email: kthomas@mcdonaldcarano.com | *Electronically filed on August 20, 2013* |

*Counsel for See Horse I, LLC*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>THE HOLDER GROUP SHARKEY'S LLC,<br><br>                              Debtor. | Case No.: 13-50844 btb<br>Chapter 11<br><br>**OBJECTION OF SEE HORSE I, LLC TO DEBTOR'S DISCLOSURE STATEMENT**<br><br>Hearing Date:    September 12, 2013<br>Hearing Time:    10:00 a.m. |

Creditor SEE HORSE I, LLC ("See Horse"), by and through its undersigned counsel, files this Objection to Debtor's Disclosure Statement dated June 13, 2013 pursuant to 11 U.S.C. §1125 (Section 1125) and Fed. Rule Bankr. P. 3017 and for cause would show:

## Background Information

1.  Debtor commenced this Chapter 11 case April 30, 2013.

2.  See Horse is the holder of two secured promissory notes (the "A Stream" and the "B" Stream") payable by Debtor in the principal amounts of $3,650,000.00 (the "A" Stream) and $146,765.54 (the "B" Stream").  Both notes are secured by a junior lien upon Debtor's real property and related personal property commonly known as "Sharkey's Casino, Gardnerville, Nevada" (referred to herein as "the Property").

The security interest in personal property includes all of the Debtor's right, title and interest in the following:

> Existing or future leases, subleases, licenses, guaranties, and any other written verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements ("Leases").
>
> Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Creditor may have in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property ("Rents").

See Horse's claim is classified in Class 2 of Debtor's Plan of Reorganization (the "Plan") dated June 13, 2013. The promissory notes and security agreements are filed as part of See Horse's proofs of claim Nos. 10 and 11 filed with this Court.

Debtor is in default in its obligations to See Horse by failing to pay the quarterly payments due and owing on the principal sum of $3,650,000.00 ("A Stream") in the amount of $50,000.00 on each of March 31, 2012, June 30, 2012, September 30, 2012 and December 31, 2012; failure to timely pay monthly installments of principal and interest due on the A Stream beginning April 20, 2012; failure to pay the partial payment in the amount of $40,000.00 due and owing on the "B Stream" on December 31, 2011; failure to pay applicable interest accruing since the date of default; failure to pay applicable late charges; failure to pay all costs and fees incurred herein.

Debtor currently owes the principal sum of $3,650,000.00 ("A Stream"), plus an additional amount due and owing in the amount of $146,765.54 ("B Stream") plus accruing interest, late charges and costs and legal expenses as set forth in the NSB Loan Documents.

Debtor's Plan proposes the following treatment for See Horse's claim:

> The Class 2 Claim shall retain its existing security interest and the outstanding loan balance shall be recalculated using the outstanding principal balance plus accrued interest at the non-default rate of interest

from the Petition Date to the Confirmation Date, less post-petition amounts paid to principal and interest by the Debtor ("Modified Loan Balance"). The Modified loan Balance shall be paid in monthly payments of principal and interest at the rate of 5.15% per annum accruing after the Confirmation Date, calculated on a thirty (30) year amortization, commencing upon the twentieth day of the month following the Confirmation Date, and continuing on the twentieth day of each successive month for eight (8) years thereafter, with the entire amount of Modified Loan Balance to be paid eight (8) years after the Confirmation Date or upon sale of the Real property, whichever occurs first in time. Any payment due shall be subject to a fifteen (15) day grace period to cure same. The Modified Loan Balance shall be deemed current as of the Confirmation Date and any Notice of Default shall be released and rescinded.

See Horse is an impaired creditor under the Plan.

See Horse's interest in Debtor's property is at special risk due to the fact that it is junior to the lien of Nevada State Bank (Class 1A) in the asserted amount of $1,638,789.79. Upon information and belief, Nevada State Bank will not agree to Debtor's proposed treatment of their claim and will object to Debtor's Disclosure Statement.

### Joinder in Nevada State Bank Objections

See Horse joins in Nevada State Bank's objections to the Disclosure Statement with respect to Debtor's ability to perform its obligations under its Plan.

### See Horse Objections

The US Trustee guidelines 7.1 (Disclosure Statements) require that a disclosure statement address the following issues which are either inadequately addressed or not addressed in Debtor's Disclosure Statement. Each of these required disclosures is highly material to See Horse's and other creditors' decisions regarding the Plan:

*(b) DESCRIPTION OF BUSINESS: The statement should describe debtor's business, including those factors which may be unusual or peculiar to the business such as seasonal cycles and unique product lines.*

Debtor should address typical seasonal fluctuations in its business and how it intends to address these fluctuations in order to make plan payments.

*(c) REASONS FOR FINANCIAL DIFFICULTIES AND CORRECTIONS MADE: The statement should contain a brief narrative description of the reasons for debtor's financial difficulties leading to the Chapter 11 bankruptcy and the actions taken to alleviate the situation since the commencement of the case.*

Debtor's Section XI, "Means for Execution and Implementation of the Plan" is barebones – with no attempt to address changes in Debtor's business model to address the cash shortfalls that are apparent in its January–April Financial Statements attached as Exhibits.

*(d) HISTORICAL AND CURRENT FINANCIAL INFORMATION: The statement should include debtor's historical financial data, post-petition financial data, including updated Monthly Operating Report information and a pro forma balance sheet as of the date of confirmation. Copies of relevant Monthly Operating Reports, or excerpts, should be attached. Where possible, financial information should be provided on both a cash and accrual basis.*

Debtor needs to attach much more substantive historical financial information such as tax returns for the past three years.  Debtor should attach updated Monthly Operating Reports and digest the information therein so that it can be compared to cash flow projections regarding the plan payments.

*(j) MEANS OF EFFECTUATING THE PLAN: The statement should include how the goals of the plan are to be accomplished, e.g., infusion of cash by an investor, sale of real or personal property, continued business operations, or issuance of stock. If an investor is to provide funds, financial information about the investor should be included.*

Debtor should address how it intends to make up for the cash flow deficits that are apparent in its financial information. The Plan Section XI on "Means of Effectuating Plan" does not address any of the critical issues the Debtor faces, as evidenced by its current operating performance. It provides merely a brief summary of Debtor's hopes:  "Debtor will have sufficient cash flow from ongoing operations to sustain the debt service contained in the Plan" [Disclosure Statement pacer page 16 lines 19-20].  There is no backup for this statement.  There is no estimate of required payments to any class of creditors over the life of the plan and no projection of income other than a vague generalization.

1  Debtor fails to disclose any anticipated repair and maintenance expenses or reserves for
2  replacement; to permit creditors and the Court to determine if Debtor can maintain the Property
3  within their budget for the next eight years.
4
5  The financial information attached to the Disclosure Statement does not appear to support
6  Debtor's forecasts. Monthly Operating Reports appear to confirm that Debtor is not meeting its
7  budget with respect to income.
8  These factors are especially critical to See Horse, who is exposed to risk of loss of its
9  interest in the Property if Debtor cannot pay the balloon payment due to Nevada State Bank when
10 due.
11

12 *(k) CASH REQUIREMENTS AND ADMINISTRATIVE EXPENSES: The statement should*
   *describe the amount and source of cash to be paid upon confirmation of the plan or its effective*
13 *date. The disclosure statement should also describe the administrative expenses, including an*
   *estimate of the amount of professional fees and costs that must be paid, the parties to whom the*
14 *expenses are owed, and whether any parties consent to an alternative treatment.*
15
   Debtor needs to include this information.
16

17 *(l) LIQUIDATION ANALYSIS: The statement should describe the difference between treatment of*
   *creditors under the plan and treatment under a Chapter 7 liquidation. The statement should*
18 *estimate the recovery on potential avoidance actions, if any. Where debtor is a partnership, the*
19 *disclosure statement should describe the rights of a Chapter 7 trustee under 11 U.S.C. § 723,*
   *including an estimate of any recovery and relevant financial information about the general*
20 *partners. Assumptions regarding liquidation values should be disclosed.*
21
   The liquidation analysis, Section XX, is skeletal at best. Debtor estimates that its assets
22 are worth "between $5,000,000.00 and $8,000,000.00"; however, Debtor provides no hard
23 numbers regarding what these assets are worth in a liquidation and the Liquidation Analysis
24
25 appears geared to unsecured creditors. Debtor should provide an estimate based upon appropriate
26 authority of the value its assets would receive in a court-ordered sale in a Chapter 7 case. Upon
27 information and belief, Debtor's principal has been involved in several bankruptcy proceedings
28 and is familiar with the results achieved when similar assets are liquidated.

372898                                                                                    5 of 7

*(m) PROJECTIONS: Where applicable, the statement should include projections as far into the future as practicable, including assumptions used in formulating the projections such as expected sales levels, gross income and net profit/loss levels, and inventory acquisition, and an explanation of why the projections are realistic. The period covered by the projections should coincide with the period of payment deferral under the plan.*

Debtor's "Feasability Analysis", Section XIX, contains only general statements about possible future income and restructuring. Debtor should provide actual numbers that reflect payments to each class of creditors each month during the term of the Plan. Debtors provide no information regarding their ability to satisfy the balloon payment at the end of the term (in eight years). Courts that consider the feasibility of the balloon payment have listed the following factors as relevant to their determination:

When a plan that proposes a final balloon payment the debtor must produce credible evidence that obtaining future financing is reasonably likely. F.H. Partners, L.P. v. Inv. Co. of the Sw., Inc. ( In re Inv. Co. of the Sw., Inc.), 341 B.R. 298, 311, 313–14, 316–17 (10th Cir. BAP2006) (finding plan not feasible when debtor had negative and uncertain cash flow with which to fund proposed balloon payment).

Courts have looked at six factors when considering the confirmation of a plan with a balloon payment:

(1) the equity in the property at the time of filing;

(2) the future earning capacity of the debtor;

(3) the future disposable income of the debtor;

(4) whether the plan provides for the payment of interest to the secured creditor over the life of the plan;

(5) whether the plan provides for payment of recurring charges against the property, including insurance, local property taxes and utility charges; and

(6) whether the plan provides for substantial payment to the secured creditor.[1]

---

[1] First Nat'l Bank v. Fantasia (In re Fantasia), 211 B.R. 420 (1st Cir. BAP1997); See also In re Diamond Springs Ranch, LLC, Slip Copy, 2011 WL 2748697 (Bkrtcy.D.Idaho,2011)

1  *(n) MANAGEMENT COMPENSATION: The statement should contain the information required by 11 U.S.C. § 1129(a)(5). For a plan implemented over time, the statement should identify persons that will control the debtor following confirmation and describe the nature and extent of control to be exercised; the business of the controlling person; the identity and experience of management of the controlling person; the identity of affiliates of the controlling person; the transaction whereby control is to be acquired; the business plans, if known, of the controlling person for debtor; pertinent financial information about the controlling person, if available; and bonding information, if applicable.*

Debtor should include this information.

*(o) INSIDER CLAIMS: For claims of insiders, the statement should disclose the identity of each claimant, the claimant's affiliation to debtor, the circumstances giving rise to the claim, and the amount and treatment of the claim. The statement should also include any material consideration provided or to be provided to an insider in connection with the case, regardless of the source of payment or whether the consideration is payable under the plan.*

Debtor should include this information.

Dated:  August 20, 2013                    Respectfully submitted,

   /s/   Kaaran Thomas
Kaaran E. Thomas (NV Bar No. 7193)
McDONALD CARANO WILON LLP
100 West Liberty St., 10th Floor
Reno, Nevada 89501
Telephone:      (775) 788-2000
Facsimile:       (775) 788-2020

*Counsel for See Horse I, LLC*

372898