McDONALD CARANO WILSON LLP
KAARAN E. THOMAS NV Bar No. 7193
RYAN J. WORKS, NV Bar No. 9224
ANTHONY CARANO, NV Bar No. 11931
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
kthomas@mcdonaldcarano.com
rworks@mcdonaldcarano.com
acarano@mcdonaldcarano.com

*Attorneys for See Horse I, LLC*

*Electronically filed* December __4__, 2013

# IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

THE HOLDER GROUP SHARKEY'S, LLC,

         Debtor.

Case No.: 13-50844-mkn
Chapter 11

**STIPULATION FOR TREATMENT OF CLAIMS OF SEE HORSE I, LLC IN DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**

Hearing Date: December 19, 2013
Hearing Time: 11:00 a.m.

Debtor, The Holder Group Sharkey's, LLC ("Debtor"), by and through its counsel Stephen R. Harris, Esq., of Harris Law Practice, LLC and See Horse I, LLC ("See Horse") by and through its counsel Ryan J. Works, Esq. of McDonald Carano Wilson LLP having resolved their dispute regarding Debtor's First Amended Plan of Reorganization (the "Plan"), [Docket No. 89], hereby stipulate and agree as follows:

IT IS STIPULATED AND AGREED that the Plan shall be amended by this stipulation as follows:

    1.    <u>Agreement as to sums due to See Horse as successor lender:</u>  Debtor acknowledges and accepts See Horse as the successor to the See Horse Predecessors, and agrees to pay to See Horse, the adjusted total sum of See Horse's proofs of claims (Claims 10-2 and 11-1) as filed in the action, adjusted and including non-default interest from the date of



default through the Confirmation Date, less post-petition payments, plus See Horse's reasonable legal fees and costs through the date of confirmation. No late charges will be assessed to the Debtor. The adjusted total sum of See Horse's proofs of claim shall be referred to as the "Modified Loan Balance" and shall be paid as detailed hereinafter. Claim 11-1 is subject to reconciliation and verification of the amounts owed by Debtor to See Horse.

2. <u>Terms of Repayment:</u> Debtor's obligation to pay the Modified Loan Balance to See Horse shall continue to be secured by the deeds of trust and other pledges of real and personal property presently securing the obligations under this loan. Debtor agrees to pay monthly, self-amortizing payments based on the above Modified Loan Balance on a 30-year amortization schedule to See Horse commencing on the fifteenth (15th) day of the month following the month in which Debtor's Plan is confirmed. Interest on the Claim shall be paid from the Confirmation Date at a rate equal to five and one-quarter percent (5.25%) annually as part of the monthly payments. Provided that all monthly payments are made on a timely basis without default, all sums remaining due on the Modified Loan Balance shall become fully due and payable at the end of the seventy-second (72nd) month following the month in which the Debtor's Plan is confirmed by the Court. Debtor's failure to pay any monthly payment due on the Modified Loan Balance to See Horse within fifteen (15) calendar days following the date upon which it is due or Debtor's failure or refusal to comply with any of the terms of this Settlement Agreement during any period of time when any sum due on the Modified Loan Balance remains unpaid shall constitute a material default of Debtor's obligations to See Horse and may, at See Horse's discretion, constitute grounds for foreclosure on the collateral that secures the Modified Loan Balance and implementation by See Horse of such other remedies as may be lawful.

3. <u>Release of All Claims by Debtor, Holder, and Holder Group.</u> On or before the Confirmation Date, the Debtor, Holder, and Holder Group shall execute and deliver to See Horse, in form and content acceptable to See Horse and Debtor, a full and complete release of all claims and defenses Debtor, Holder, and/or the Holder Group may have against See Horse and its Manager and Member, that may have arisen or may arise under any federal or State

laws with regards to obligations owed by Debtor to See Horse. Debtor is not releasing the FDIC and/or See Horse's Predecessors.

4. <u>Agreement by Debtor to fund capital expenditures.</u> The Debtor agrees to expend a minimum of two hundred thousand dollars ($200,000) per calendar year (commencing January 2014) as capital expenditures on the Debtor's real and personal property, subject to the following terms and conditions:

   a. The annual sum for capital expenditures shall be expended only on capital expenditures defined and determined by Generally Accepted Accounting Principles ("GAAP"); however, this amount does not include repair and maintenance expenditures. Authorized capital expenditures shall include, but is not limited to: the purchase of new and/or reconditioned gaming devices from the major gaming device manufacturers/distributors (including but not limited to IGT, WMS, Aristocrat, or Bally Technologies, but shall not include any Holder related entity);

   b. The funds for such capital expenditures shall be deposited by Debtor in a separate, segregated bank account which shall be dedicated solely to the retention of such funds, subject only to release upon capital expenditure disbursements. The funds to be allocated to such capital expenses shall be paid directly to the vendor or creditor providing the capital goods or, if not so paid and credited against this obligation, shall be paid into the segregated account at the following rate: $5,000 per month in January, February and March of each year; $15,000 per month in April and May of each year; $30,000 per month in June, July, August and September of each year; $15,000 in October of each year; and $10,000 per month in November and December of each year.

   c. Funds paid to the capital expenditures bank account shall be made on or before the 15th day of each of the above months. Debtor's failure to pay any of the capital expenditures within fifteen (15) calendar days following the date upon



which it is due shall constitute a material default of Debtor's obligations to See Horse.

    d. In the event the Debtor fails to fund the separate, segregated capital expenditure bank account on the schedule set forth above, See Horse may proceed pursuant to paragraph 9 and the Bankruptcy Court will retain no jurisdiction over such monetary default;

    e. Debtor, Holder, and Holder Group agree that no sums shall be paid to Holder, Holder Group or any affiliate thereof for management fees or otherwise, during any period when the sums due to be expended for authorized capital expenditures have not been so expended or accrued in the segregated bank account set up for this purpose;

    f. Debtor, Holder and Holder Group agree that any capital expenditures made from the $200,000 capital expenditures budget set forth above, and not made to improve the collateral securing the See Horse obligations, shall be subject to the consent of See Horse, which shall not be unreasonably withheld.

5.    <u>Ratification of Personal Guarantees by Mr. and Mrs. Holder.</u> On or before the confirmation date, Mr. and Mrs. Holder will execute and deliver to See Horse and Debtor, in form and content acceptable to See Horse and Mr. and Mrs. Holder, a re-affirmation and ratification of their personal guarantees for repayment of all sums due to See Horse by Debtor.

6.    <u>Agreement by Debtor that Bankruptcy Court has limited continuing jurisdiction over disputes relating to Capital Expenditures only.</u> Debtor agrees that after the Plan goes into effect on the Confirmation Date, the United States Bankruptcy Court shall have limited continuing jurisdiction over Debtor's capital expenditures only. The Bankruptcy Court shall have no jurisdiction over any other disputes that may arise under the Plan of Reorganization or this Settlement Agreement, with regard to the enforcement of See Horse's rights in the secured property pledged as collateral for repayment of the sums due to See Horse, or in the event of a monetary default of the Debtor's obligations to fund the separate, segregated capital expenditure bank account pursuant to the schedule set forth in paragraph 4.



7. <u>Agreement by Debtor regarding filing of future bankruptcy actions.</u> Debtor agrees that it will not seek or file any new or subsequent request for bankruptcy protection any time after the Confirmation Date and before the Modified Loan Balance is fully paid and satisfied in full until no less than 90 days after all sums due as part of the Modified Loan Balance are paid to See Horse.

8. <u>Debtor's Agreement to provide monthly financial reports to See Horse.</u> Debtor agrees that it will provide monthly financial reports to See Horse, in form and substance acceptable to See Horse and the Debtor, commencing at the end of the first full month of business operations after the Confirmation Date until the Modified Loan Balance is fully paid to See Horse. The monthly financial reports shall include, but not be limited to, copies of all bank statements and reports maintained by Debtor, invoices for capital expenditures reports of operating revenues and expenses, and other financial information as may be reasonably requested by See Horse. Monthly financial reports will be provided to See Horse no later than the last business day in the month following the month being reported.

9. <u>Pending Notice of Default and Election to Sell to remain on title and in effect.</u> Debtor agrees that the pending Notice of Default and Election to Sell previously recorded and given by See Horse with regard to the properties securing payment of the obligations owed by Debtor to See Horse shall remain on title and in full force and effect for a period of two (2) years following the Confirmation Date of the Plan. Provided that Debtor makes all payments due to See Horse under this Settlement Agreement during the said two (2) year period, Debtor shall be entitled to receive from See Horse a Rescission of the Notice of Default and Election to Sell. In the event of a post-Confirmation default within two (2) years following the Confirmation Date, for which the Bankruptcy Court retains no jurisdiction, Debtor agrees that See Horse may immediately proceed to record a Notice of Sale as contemplated by NRS 107.080(4). Further, as part of this Settlement Agreement, Debtor agrees and stipulates that See Horse is and shall be entitled to relief from any automatic stay that may apply under the circumstances and to pursue any available remedies, including but not limited to foreclosure on the collateral which See Horse may file fifteen (15) days following any post-Confirmation

default (whenever occurring) under the Plan by Debtor, with Debtor being allowed the same fifteen (15) day right to cure the same. Debtor agrees that See Horse will not be required to seek or obtain any further court order or approval to exercise its rights hereunder or in the collateral, including foreclosure on the collateral, in the event of post-Confirmation default. Following the recordation of the Notice of Sale and up to the date of the foreclosure sale, the Debtor shall be allowed to pay the entire unpaid balance due to See Horse on the obligation. Further, so long as Debtor is current in making all payments due to See Horse under this Settlement Agreement, then See Horse shall not commence action against Mr. and Mrs. Holder on their personal guarantees to See Horse.

10. <u>Default Rate of Interest</u>. In the event any post-Confirmation default remains uncured by Debtor for a period in excess of fifteen (15) days, the interest rate due on the sums remaining due on the Approved Claim shall revert to the default rate of interest allowed under the terms of the Promissory Note retroactive to the Petition Date.

11. <u>Information required by State Gaming Control Board</u>. See Horse agrees that it will provide directly to the State Gaming Control Board on a confidential basis any information and documents that may be required by the State Gaming Control Board in connection with the loan which it acquired from Umpqua Bank with regard to the Debtor and its properties.

12. <u>Ballot Acceptance.</u> After all parties hereto have executed this Stipulation, then See Horse 1, LLC, agrees to vote to accept the Debtor's First Amended Plan of Reorganization [Docket No. 89], as amended herein, into which the terms and conditions of this Stipulation will be incorporated by a First Amendment to the Debtor's First Amended Plan of Reorganization.

IT IS FURTHER STIPULATED AND AGREED that any order confirming the Plan shall incorporate the modified treatment of See Horse's claims and the other modifications to the Plan as agreed to herein.



Dated this 30th day of November, 2013.

| | |
|---|---|
| McDONALD CARANO WILSON LLP | HARRIS LAW PRACTICE, LLC |
| By /s/ Ryan J. Works | By: /s/ Stephen R. Harris |
| RYAN J. WORKS, NV Bar No. 9224 | STEPHEN R. HARRIS, Esq. |
| 2300 West Sahara Avenue, Suite 1200 | 6151 Lakeside Dr., Suite 2100 |
| Las Vegas, NV 89102 | Reno, NV 89511 |
| rworks@mcdonaldcarano.com | Phone: (775) 786-7600 |
| *Attorneys for See Horse I, LLC* | Fax: (775) 786-7764 |
| | steve@harrislawreno.com |
| | *Attorneys for Debtor* |

THE HOLDER GROUP SHARKEY'S, LLC

/s/ Harold D. Holder Sr.
HAROLD D. HOLDER, SR., Manager

/s/ Harold D. Holder
HAROLD D. HOLDER, an individual

SEE HORSE I, LLC

/s/ Michael E. Pegram
MICHAEL E. PEGRAM, Manager