STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, Nevada 89511
Telephone:  (775) 786-7600
E-Mail: steve@harrislawreno.com
Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF NEVADA

* * * * *

|  |  |
|---|---|
| IN RE: | Case No. 13-50844-btb |
| THE HOLDER GROUP SHARKEY'S, LLC, | (Chapter 11) |
|  | **FIRST AMENDMENT TO DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION** |
| Debtor. | Hearing Date:  December 19, 2013 |
|  | Hearing Time: 11:00 a.m. |

**THE HOLDER GROUP SHARKEY'S, LLC, a Nevada limited liability company,** Debtor and Debtor-in-Possession ("Debtor") in the above-captioned Chapter 11 reorganization case, pursuant to 11 U.S.C. § 1121(a), hereby proposes the following **FIRST AMENDMENT TO DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION,** by and through its attorneys undersigned and named herein, and requests confirmation thereof pursuant to the provisions of 11 U.S.C. § 1129(a) and (b).

**ARTICLE III. UNCLASSIFIED PRIORITY TAX CLAIMS, is amended in its entirety as follows:**

### UNCLASSIFIED PRIORITY TAX CLAIMS:

1. **Description**. The Debtor's priority tax claims are as follows:

| Name | Scheduled Amount | Proof of Claim Amount | Allowed Priority Amount |
|---|---|---|---|
| Douglas County Treasurer | $10,261.87 | | Paid - $0.00 |
| Internal Revenue Service | $10,732.96 | $9,730.40 | $9,730.40 |
| Nevada Department of Taxation | $5,476.07 | | Paid - $0.00 |
| **Total:** | $26,470.90 | $9,730.40 | $9,730.40 |

Pursuant to the Debtor's Plan, the treatment and disposition of the unclassified priority tax claims, if any, will be as follows: Any claim discrepancy will be resolved by the claim objection process, with the stipulated amount and/or Court decreed amount owing used to calculate that particular creditors' allowed claim being paid by the Debtor.   All unclassified priority tax creditors shall be paid 100% of their allowed claim amount, with statutory interest thereon, on or before one (1) year after the Effective Date of the Plan, payable in equal monthly installments.  In the event the Debtor fails to make the payments as set forth hereinabove, the allowed priority tax creditors, if any, shall have the right to proceed with any administrative and statutory remedies available to them, fifteen (15) days after written notice of default has been given to the Debtor and its attorney, Stephen R. Harris, Esq.

**ARTICLE IV. CLASSIFICATION OF CLAIMS AND INTERESTS –CLASS 5 GENERAL UNSECURED CLAIMS,** is amended in its entirety as follows:

5. <u>CLASS 5 CLAIMS [ALLOWED GENERAL UNSECURED CREDITORS]</u>:  This Class consists of all allowed general unsecured claims against the Debtor and disputed claims to the extent disputed claims may be proven and allowed by the Court.  The Class 5 Allowed General Unsecured Claims total approximately **$862,504.71**, and are detailed as follows:

| **CREDITOR CLAIMS** | **SCHEDULED AMOUNT** | **PROOF OF CLAIM AMOUNT** | **ALLOWED AMOUNT** |
|---|---|---|---|
| A #1 CHEMICAL, INC | $466.67 | 0.00 | $466.67 |
| ACE HARDWARE | $550.97 | 0.00 | $405.25 |
| AMERIPRIDE SERVICES, INC. | $2,998.99 | Critical Vendor | $0.00 |

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

| | | paid post-petition | |
|---|---|---|---|
| BEST BREWED TEAS | $161.20 | Critical Vendor paid post-petition | $0.00 |
| BMI | $953.73 | $999.37 | $0.00 |
| C & M FOOD DISTRIBUTORS | $3,556.93 | | $2,605.79 |
| CROWN BEVERAGES, INC | $540.49 | $536.09 Critical Vendor paid post-petition | $0.00 |
| DMS DIRECT INC. | $532.05 | Critical Vendor paid post-petition | $0.00 |
| DYNASTY GAMES | $997.79 | | $997.79 |
| FARMER BROS. COFFEE | $1,912.47 | Critical Vendor paid post-petition | $0.00 |
| FIREMANS FUND INSURANCE | $20,000.00 | 0.00 | $20,000.00 |
| FRANCO FRENCH | $765.97 | Critical Vendor paid post-petition | $0.00 |
| INTERNAL REVENUE SERVICE | $0.00 | $2,727.23 | $2,127.23 |
| J W WELDING SUPPLY | $1,163.79 | 0.00 | $1,163.79 |
| MILOS SHARKEY BEGOVICH LIVING TRUST DTD 5/2/02 | $760,391.50 Disputed | $760,000.00 | $700,000.00 * |
| MINDEN & GARDNERVILLE SANITATION DISTRICT | $2,975.78 | Critical Vendor paid post-petition | $0.00 |
| MODEL DAIRY, INC | $2,031.51 | Critical Vendor paid post-petition | $0.00 |
| NEVADA RESTAURANT SUPPLY | $114.88 | 0.00 | $0.00 |
| NEW WEST | $1,412.45 | Critical Vendor paid post-petition | $0.00 |
| PONDEROSA MEAT & PROVISIONS | $8,101.05 | Critical Vendor paid post-petition | $0.00 |
| SAGE BUSINESS WORKS | $868.85 | 0.00 | $868.85 |
| SCOLARI'S FOOD & DRUG | $73.99 | 0.00 | $0.00 |
| SIERRA NEVADA MEDIA GROUP | $300.00 | 0.00 | $0.00 |
| SIMPLEX GRINNELL | $432.12 | 0.00 | $0.00 |
| SKILLMAN GROUP, LLC | $4,300.00 | 0.00 | $4,300.00 |
| SOUTHERN WINE SPIRITS | $2,708.87 | Critical Vendor paid post-petition | $0.00 |
| STAPLES BUSINESS ADVANTAGE | $2,019.38 | 0.00 | $1,674.28 |
| STOR-ALL | $396.00 | 0.00 | $0.00 |

| | | | |
|---|---|---|---|
| SWIRE COCA-COLA, USA | $2,842.00 | $109.20 | $0.00 |
| TAVERN PRODUCTS INC | $836.25 | Critical Vendor paid post-petition | $0.00 |
| THE HOLDER GROUP SUNDANCE, LLC (Insider) | $57,333.32 | 0.00 | $87,333.32 |
| THE HOLDER GROUP, LLC (Insider) | $66,783.21 | 0.00 | $33,783.21 |
| TOWN OF GARDNERVILLE | $2,760.14 | 0.00 | $0.00 |
| US FOODS | $7,333.46 | 0.00 | $5,816.22 |
| WEDCO INC. | $961.31 | 0.00 | $961.31 |
| WIRTZ BEVERAGE NV | $603.20 | Critical Vendor paid post-petition | $0.00 |
| **TOTALS** | **$960,180.32** | | **$862,503.71** |

*Allowance subject to zero interest.

**ARTICLE V. TREATMENT OF CLASSES Paragraph 1A, is amended in its entirety as follows:**

Pursuant to the STIPULATION FOR TREATMENT OF CLAIMS OF NEVADA STATE BANK IN DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION [Docket No. 105] and the Order approving same [Docket No. 106] (the "NSB Stipulation"), a copy of which is attached hereto as Exhibit A and incorporated herein by that reference, the Class 1A secured claims of NSB shall be treated and paid as follows:

1A.    CLASS 1A SECURED CLAIM [NEVADA STATE BANK]:    The Class IA secured Claim of NSB shall retain its existing security interest and the outstanding loan balance shall be recalculated using the outstanding principal balance plus accrued interest at the non-default rate of interest from the Petition Date to the Confirmation Date, plus reasonable attorney's fees, collection costs and late fees, less post-petition amounts paid to principal and interest by the Debtor ("Modified Loan Balance"). The Modified Loan Balance shall be paid in monthly payments of principal and interest at the rate of 5.25% per annum accruing after the Confirmation Date, calculated on a thirty (30) year amortization, commencing upon the 10th day of the month following the Confirmation Date, and continuing on the tenth day of each successive month for six (6) years thereafter, with the entire amount of Modified Loan Balance to be paid six (6) years after the Confirmation Date or upon sale of the Real Property, whichever

occurs first in time. Any payment due shall be subject to a fifteen (15) day grace period to cure same. The Modified Loan Balance shall be deemed current as of the Confirmation Date and any Notice of Default shall be released and rescinded. Debtor believes the interest rate proposed herein is appropriate based on the decision rendered in In re Till, 301F.3d 583,591 (2002), and has been applied by this Court in previous confirmation hearings in early 2013. Debtor shall provide evidence of payment of real property taxes and payment of insurance premiums to NSB within 10 days of paying same. Debtor shall maintain and provide proof of insurance naming NSB as an additional insured until such time as NSB is paid in full. Accordingly, the Class 1A secured claim of NSB is impaired.

**ARTICLE V. TREATMENT OF CLASSES Paragraph 1B, is amended in its entirety as follows**:

Pursuant to the STIPULATION FOR TREATMENT OF CLAIMS OF NEVADA STATE BANK IN DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION [Docket No. 105] and the Order approving same [Docket No. 106] (the "NSB Stipulation"), a copy of which is attached hereto as Exhibit A and incorporated herein by that reference, the Class 1B secured claim of NSB shall be treated and paid as follows:

1B.  CLASS 1B SECURED CLAIM [NEVADA STATE BANK]:  The Class 1B secured claim of NSB shall retain its existing security interest and the outstanding loan balance shall be recalculated as of the Confirmation Date using the outstanding principal balance as of the Petition Date plus accrued interest at the non-default rate of interest from the date of default to the Confirmation Date, plus reasonable attorney's fees, collection costs, with no pre-petition late fees accrued, less post-petition amounts paid to principal and interest by the Debtor ("Modified Loan Balance").  The Modified Loan Balance shall be repaid in equal payments of $2,200 per month with interest calculated at 5.25% on the principal balance, to be paid on or before the tenth day of each successive month until paid in full, with monthly payments commencing January, 2014.  Any payment due shall be subject to a fifteen (15) day grace period to cure same.   The Modified Loan Balance shall be deemed current as of the Confirmation Date and any Notice of Default shall be released and rescinded.   Debtor believes

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

1    the interest rate proposed herein is appropriate based on the decision rendered in In re Till,

2    301 F.3d 583,591 (2002) and has been applied by this Court in previous confirmation hearings in

3    early 2013. Accordingly, the Class 1B secured claim of NSB is <u>impaired.</u>

4         **ARTICLE V. TREATMENT OF CLASSES, is amended to add Paragraph 1C as**

5    **follows:**

6         Pursuant to the NSB Stipulation, the Class 1A and Class 1B secured claims of NSB shall

7    be amended to include notice provisions as follows:

8         **1C.**   <u>ADDRESSES FOR NOTICES AND PAYMENTS:</u>

9         All notices and payments sent to NSB pursuant, or related, to the Plan shall be directed to
the following

10

11         Nevada State Bank
     Attn: Michael Hanley, Senior Vice President

12         400 N. Green Valley Pkwy, 2nd Floor
     Henderson, Nevada 89704

13         Phone: (702) 589-2588
     Email: <u>Michael.Hanley@nsbank.com</u>

14

15    With Copy of Notices only to:

16         Stefanie T. Sharp
     Robinson, Belaustegui Sharp and Low

17         71 Washington Street
     Reno, Nevada 89503

18         Phone: (775)329-3151

19         Fax: (775) 329-7941
     Email: <u>ssharp@rbsllaw.com</u>

20

21    All notices sent to Debtor pursuant, or related, to the Plan shall be directed to the following:

22         The Holder Group Sharkey's
     c/o Holder Hospitality Group International, Inc.

23         Attn: Kyla M. Bryson

24         5355 Kietzke Lane, Suite 102
     Reno, Nevada 89511.

25         Phone: (775) 825-7267
     Email: kbryson@hhgcasinos.com

26         With Copy of Notices Only to:

27

28         Stephen R. Harris, Esq.
     Harris Law Practice LLC

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

6

6151 Lakeside Drive, Suite 2100
Reno, Nevada 89511
Phone: (775) 786-7600
Fax: (775) 786-7764
Email: steve@harrislawreno.com

**ARTICLE V. TREATMENT OF CLASSES,** Paragraph 2 is amended in its entirety as follows:

Pursuant to the STIPULATION FOR TREATMENT OF CLAIMS OF SEE HORSE I, LLC, IN DEBTOR'S FIRST AMENDED PLAN OR REORGANIZATION [Docket No. 123] (the "See Horse Stipulation"), a copy of which is attached hereto as Exhibit B and incorporated herein by that reference, the Class 2 secured claim of See Horse I, LLC, shall be treated and paid as follows:

1.    Agreement as to sums due to See Horse as successor lender:    Debtor acknowledges and accepts See Horse as the successor to the See Horse Predecessors, and agrees to pay to See Horse, the adjusted total sum of See Horse's proofs of claims (Claims 10-2 and 11-1) as filed in the action, adjusted and including non-default interest from the date of default through the Confirmation Date, less post-petition payments, plus See Horse's reasonable legal fees and costs through the date of confirmation.  No late charges will be assessed to the Debtor.  The adjusted total sum of See Horse's proofs of claim shall be referred to as the "Modified Loan Balance" and shall be paid as detailed hereinafter.  Claim 11-1 is subject to reconciliation and verification of the amounts owed by Debtor to See Horse.

2.    Terms of Repayment:  Debtor's obligation to pay the Modified Loan Balance to See Horse shall continue to be secured by the deeds of trust and other pledges of real and personal property presently securing the obligations under this loan.  Debtor agrees to pay monthly, self-amortizing payments based on the above Modified Loan Balance on a 30-year amortization schedule to See Horse commencing on the fifteenth (15th) day of the month following the month in which Debtor's Plan is confirmed.  Interest on the Claim shall be paid from the Confirmation Date at a rate equal to five and one-quarter percent (5.25%) annually as part of the monthly payments. Provided that all monthly payments are made on a timely basis

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

7

without default, all sums remaining due on the Modified Loan Balance shall become fully due and payable at the end of the seventy-second (72nd) month following the month in which the Debtor's Plan is confirmed by the Court. Debtor's failure to pay any monthly payment due on the Modified Loan Balance to See Horse within fifteen (15) calendar days following the date upon which it is due or Debtor's failure or refusal to comply with any of the terms of this Settlement Agreement during any period of time when any sum due on the Modified Loan Balance remains unpaid shall constitute a material default of Debtor's obligations to See Horse and may, at See Horse's discretion, constitute grounds for foreclosure on the collateral that secures the Modified Loan Balance and implementation by See Horse of such other remedies as may be lawful.

3.    Release of All Claims by Debtor, Holder, and Holder Group. On or before the Confirmation Date, the Debtor, Holder, and Holder Group shall execute and deliver to See Horse, in form and content acceptable to See Horse and Debtor, a full and complete release of all claims and defenses Debtor, Holder, and/or the Holder Group may have against See Horse and its Manager and Member, that may have arisen or may arise under any federal or State laws with regards to obligations owed by Debtor to See Horse. Debtor is not releasing the FDIC and/or See Horse's Predecessors.

4.    Agreement by Debtor to fund capital expenditures. The Debtor agrees to expend a minimum of two hundred thousand dollars ($200,000) per calendar year (commencing January 2014) as capital expenditures on the Debtor's real and personal property, subject to the following terms and conditions:

a.    The annual sum for capital expenditures shall be expended only on capital expenditures defined and determined by Generally Accepted Accounting Principles ("GAAP"); however, this amount does not include repair and maintenance expenditures. Authorized capital expenditures shall include, but is not limited to: the purchase of new and/ or reconditioned gaming devices from the major gaming device manufacturers/distributors (including but not limited to

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

8

IGT, WMS, Aristocrat, or Bally Technologies, but shall not include any Holder related entity);

b.  The funds for such capital expenditures shall be deposited by Debtor in a separate, segregated bank account which shall be dedicated solely to the retention of such funds, subject only to release upon capital expenditure disbursements.  The funds to be allocated to such capital expenses shall be paid directly to the vendor or creditor providing the capital goods or, if not so paid and credited against this obligation, shall be paid into the segregated account at the following rate: $5,000 per month in January, February and March of each year; $15,000 per month in April and May of each year; $30,000 per month in June, July, August and September of each year; $15,000 in October of each year; and $10,000 per month in November and December of each year.

c.  Funds paid to the capital expenditures bank account shall be made on or before the 15th day of each of the above months.  Debtor's failure to pay any of the capital expenditures within fifteen (15) calendar days following the date upon which it is due shall constitute a material default of Debtor's obligations to See Horse.

d.  In the event the Debtor fails to fund the separate, segregated capital expenditure bank account on the schedule set forth above, See Horse may proceed pursuant to paragraph 9 and the Bankruptcy Court will retain no jurisdiction over such monetary default;

e.  Debtor, Holder, and Holder Group agree that no sums shall be paid to Holder, Holder Group or any affiliate thereof for management fees or otherwise, during any period when the sums due to be expended for authorized capital expenditures have not been so expended or accrued in the segregated bank account set up for this purpose;

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

9

f.  Debtor, Holder and Holder Group agree that any capital expenditures made from the $200,000 capital expenditures budget set forth above, and not made to improve the collateral securing the See Horse obligations, shall be subject to the consent of See Horse, which shall not be unreasonably withheld.

5.  <u>Ratification of Personal Guarantees by Mr. and Mrs. Holder.</u>  On or before the confirmation date, Mr. and Mrs. Holder will execute and deliver to See Horse and Debtor, in form and content acceptable to See Horse and Mr. and Mrs. Holder, a re-affirmation and ratification of their personal guarantees for repayment of all sums due to See Horse by Debtor.

6.  <u>Agreement by Debtor that Bankruptcy Court has limited continuing jurisdiction over disputes relating to Capital Expenditures only.</u>  Debtor agrees that after the Plan goes into effect on the Confirmation Date, the United States Bankruptcy Court shall have limited continuing jurisdiction over Debtor's capital expenditures only.  The Bankruptcy Court shall have no jurisdiction over any other disputes that may arise under the Plan of Reorganization or this Settlement Agreement, with regard to the enforcement of See Horse's rights in the secured property pledged as collateral for repayment of the sums due to See Horse, or in the event of a monetary default of the Debtor's obligations to fund the separate, segregated capital expenditure bank account pursuant to the schedule set forth in paragraph 4.

7.  <u>Agreement by Debtor regarding filing of future bankruptcy actions.</u>  Debtor agrees that it will not seek or file any new or subsequent request for bankruptcy protection any time after the Confirmation Date and before the  Modified Loan Balance is fully paid and satisfied in full until no less than 90 days after all sums due as part of the  Modified Loan Balance are paid to See Horse.

8.  <u>Debtor's Agreement to provide monthly financial reports to See Horse.</u>  Debtor agrees that it will provide monthly financial reports to See Horse, in form and substance acceptable to See Horse and the Debtor, commencing at the end of the first full month of business operations after the Confirmation Date until the Modified Loan Balance is fully paid to See Horse.  The monthly financial reports shall include, but not be limited to, copies of all

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

10

bank statements and reports maintained by Debtor, invoices for capital expenditures reports of operating revenues and expenses, and other financial information as may be reasonably requested by See Horse.  Monthly financial reports will be provided to See Horse no later than the last business day in the month following the month being reported.

9.    <u>Pending Notice of Default and Election to Sell to remain on title and in effect.</u> Debtor agrees that the pending Notice of Default and Election to Sell previously recorded and given by See Horse with regard to the properties securing payment of the obligations owed by Debtor to See Horse shall remain on title and in full force and effect for a period of two (2) years following the Confirmation Date of the Plan.  Provided that Debtor makes all payments due to See Horse under this Settlement Agreement during the said two (2) year period,  Debtor shall be entitled to receive from See Horse a Rescission of the Notice of Default and Election to Sell.    In the event of a post-Confirmation default within two (2) years following the Confirmation Date, for which the Bankruptcy Court retains no jurisdiction, Debtor agrees that See Horse may immediately proceed to record a Notice of Sale as contemplated by NRS 107.080(4). Further, as part of this Settlement Agreement, Debtor agrees and stipulates that See Horse is and shall be entitled to relief from any automatic stay that may apply under the circumstances and to pursue any available remedies, including but not limited to foreclosure on the collateral which See Horse may file fifteen (15) days following any post-Confirmation default (whenever occurring) under the Plan by Debtor, with Debtor being allowed the same fifteen (15) day right to cure the same.  Debtor agrees that See Horse will not be required to seek or obtain any further court order or approval to exercise its rights hereunder or in the collateral, including foreclosure on the collateral, in the event of post-Confirmation default. Following the recordation of the Notice of Sale and up to the date of the foreclosure sale, the Debtor shall be allowed to pay the entire unpaid balance due to See Horse on the obligation. Further, so long as Debtor is current in making all payments due to See Horse under this Settlement Agreement, then See Horse shall not commence action against Mr. and Mrs. Holder on their personal guarantees to See Horse.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

10. <u>Default Rate of Interest</u>. In the event any post-Confirmation default remains uncured by Debtor for a period in excess of fifteen (15) days, the interest rate due on the sums remaining due on the Approved Claim shall revert to the default rate of interest allowed under the terms of the Promissory Note retroactive to the Petition Date.

11. <u>Information required by State Gaming Control Board</u>. See Horse agrees that it will provide directly to the State Gaming Control Board on a confidential basis any information and documents that may be required by the State Gaming Control Board in connection with the loan which it acquired from Umpqua Bank with regard to the Debtor and its properties.

See Horse 1, LLC, further has agreed to vote to accept the Debtor's First Amended Plan of Reorganization, as amended by this First Amendment.

**ARTICLE V. TREATMENT OF CLASSES** Paragraphs 3A and 3B, are amended in their entirety as follows:

Pursuant to the STIPULATION FOR TREATMENT OF CLAIMS OF CITY NATIONAL BANK'S CLASS 3A AND 3B SECURED CLAIMS IN DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION [Docket No. 114] (the "CNB Stipulation"), a copy of which is attached hereto as Exhibit C and incorporated herein by that reference, the Class 3A and Class 3B secured claims of CNB shall be treated and paid as follows:

**CLASS 3A SECURED CLAIM [CITY NATIONAL BANK]:** The Class 3A Claim (aka Loan 728) and the Class 3B Claim (aka Loan 698) shall be restructured as one loan in the amount of the outstanding loan balances ($105,903.92 for Class 3A and $106,020.99 for Class 3B, for a total of $211,924.91), plus post-petition attorney's fees and costs through the Confirmation Date, plus accrued interest at the non-default rate of interest, which is 7% under the loans documents, from the Petition Date to the Confirmation Date, less post-petition payments paid to principal and interest by Debtor ("Modified Loan Balance"), which restructured loan as provided herein and the performance thereof shall retain the existing security interest and deed of trust in first-priority position. With respect to the Class 3A Secured Claim, the deed of trust was recorded as Document No. 0576831, on May 9, 2003, in

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

12

the official records of the Douglas County Recorder's Office with respect to the real property with APN 1320-33-401-017.

The Modified Loan Balance shall be paid in monthly payments of principal and interest at the rate of 5.25% per annum accruing after the Confirmation Date, calculated on a twenty (20) year amortization, commencing upon the fifth day of each month following the Confirmation Date, and continuing on the fifth day of each successive month for four (4) years thereafter, with the entire amount of the Modified Loan Balance to be paid four (4) years after the Confirmation Date or upon a sale of either of the real properties, whichever occurs first in time. Any payment shall be subject to a fifteen (15) day grace period to cure the same. The Modified Loan Balance shall be deemed current as of the Confirmation Date and any Notice of Default shall be released and rescinded. Debtor shall provide evidence of payment of real property taxes and insurance premiums to City National Bank within ten (10) days of paying the same. Debtor shall maintain and provide proof of insurance naming City National Bank as an additional insured until such time as City National Bank is paid in full. The loan documents shall remain in full force and effect except as modified herein. If necessary, City National Bank and Debtor shall timely execute any and all documents to effectuate the treatment provided herein.   Accordingly, the Class 3A secured claim of City National Bank is impaired.

**CLASS 3B SECURED CLAIM [CITY NATIONAL BANK]:** The Class 3B Claim (aka Loan 698) and the Class 3A Claim (aka Loan 728) shall be restructured as one loan in the amount of the outstanding loan balances ($105,903.92 for Class 3A and $106,020.99 for Class 3B, for a total of $211,924.91) plus post-petition attorney's fees and costs through the Confirmation Date, plus accrued interest at the non-default rate of interest, which is 7% under the loans documents, from the Petition Date to the Confirmation Date, less post-petition payments paid to principal and interest by Debtor ("Modified Loan Balance"), which

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

13

restructured loan as provided herein and the performance thereof shall retain the existing

security interests and deeds of trust in first-priority position. With respect to the Class 3B

Claim, the deed of trust was recorded as Document No. 0576831, on May 12, 2003, in the

official records of the Douglas County Recorder's Office with respect to the real property with

APN 1320-33-401-033.

The Modified Loan Balance shall be paid in monthly payments of principal and interest

at the rate of 5.25% per annum accruing after the Confirmation Date, calculated on a twenty

(20) year amortization, commencing upon the fifth day of each month following the

Confirmation Date, and continuing on the fifth day of each successive month for four (4) years

thereafter, with the entire amount of the Modified Loan Balance to be paid four (4) years after

the Confirmation Date or upon a sale of either of the real properties, whichever occurs first in

time. Any payment shall be subject to a fifteen (15) day grace period to cure the same. The

Modified Loan Balance shall be deemed current as of the Confirmation Date and any Notice of

Default shall be released and rescinded. Debtor shall provide evidence of payment of real

property taxes and insurance premiums to City National Bank within ten (10) days of paying the

same. Debtor shall maintain and provide proof of insurance naming City National Bank as an

additional insured until such time as City National Bank is paid in full. The loan documents

shall remain in full force and effect except as modified herein. If necessary, City National Bank

and Debtor shall timely execute any and all documents to effectuate the treatment provided

herein. Accordingly, the Class 3B secured claim of City National Bank is impaired.

For the avoidance of any doubt, the treatment provided herein for the Class 3A and

Class 3B Secured Claims require one monthly payment on the restructured loan. The foregoing

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

amended treatment of the Class 3A and Class 3B Secured Claims shall be incorporated into an order confirming Debtor's First Amended Plan of Reorganization, as amended

**ARTICLE V. TREATMENT OF CLASSES Paragraph 5, is amended in its entirety as follows:**

5. CLASS 5 CLAIMS [ALLOWED GENERAL UNSECURED CREDITORS]:

Pursuant to the STIPULATION FOR TREATMENT OF GENERAL UNSECURED CLAIM OF THE MILOS SHARKEY BEGOVICH LIVING TRUST DTD 5/2/02 [Docket No. 122] a copy of which is attached hereto as Exhibit D and incorporated herein by that reference, the Class 5 Allowed General Unsecured Creditors, shall be treated and paid 100% of their allowed claims by the Debtor as follows:

1.     The Class 5 non-insider allowed general unsecured claims totaling $41,388.18 shall be paid in full prorata within two (2) years of the Confirmation Date in monthly payments of principal and interest at the rate of 5.25% per annum accruing after the Confirmation Date, calculated on a two (2) year amortization until paid in full;

2.     The general unsecured claim of the Begovich Trust is deemed an allowed claim for $700,000.00, not the Proof of Claim amount of $760,000.00, and shall be payable monthly at zero percent interest pursuant to the terms of the parties' original promissory note, with monthly payments to be amortized over a thirty (30) year period, and to be paid in full eight (8) years following the Confirmation Date, with monthly payments to commence January 15, 2014, and continue on the 15th day of each successive month thereafter, with a 15 day grace period. Further, upon confirmation, the Trustees of the Begovich Trust agree to dismiss the breach of contract complaint now pending in the Ninth Judicial District Court in and for the County of Douglas, State of Nevada, case no. 13-cv0063, without prejudice, but with the condition that the civil case may only be recommenced upon a post-petition default by the Debtor; and

3.     The Class 5 "insider" allowed general unsecured claims of the Debtor shall be paid only after the Class 5 non-insider claims and the Class 5 claim of the Begovich Trust are paid in full.

Accordingly, the Class 5 General Unsecured Claims are impaired under the Plan.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

15

**ARTICLE VI Paragraph 2, is amended in its entirety as follows:**

**2. <u>DISPUTED CLAIMS</u>.**

Through its Disbursing Agent, the Debtor will only make distributions according to the Plan and when their claims become allowed claims and interest as such terms are defined in the Plan. There are currently claims pending against the Debtor, either filed or scheduled, which are or will become Disputed Claims. As to some Disputed Claims, the Debtor disputes only the classification of the claims asserted by the holder. With respect to other Disputed Claims, the Debtor accepts the classification asserted by the holder but disputes the amount of the claim alleged by such holder. In some cases, the Debtor disputes both the asserted classification and the alleged amount. In addition, the Debtor and other parties in interest may object to certain other claims based upon equitable or contractual subordination pursuant to § 510 of the Bankruptcy Code. Specifically, such subordination claims may be asserted against any person or entity buying claim(s) for speculation and profit in Debtor's bankruptcy cases. No distribution will be made with respect to any such Disputed Claims unless and until they become allowed claims. THE HOLDER GROUP SHARKEY'S, LLC disputes the following claims at this time: NONE

**ARTICLE VIII. Paragraph 1, is amended in its entirety as follows:**

ARTICLE VIII.

<u>MEANS FOR EXECUTION OF THE PLAN</u>

1. **Operations of Property, Advances from Guarantors and Disbursements.**

The Debtor is a duly licensed casino currently operating 138 gaming machines, and containing an independently operated sports book. While the Debtor's income decreased dramatically in 2010, steady increases in income have been posted for 2011 and 2012, and Debtor has based its projections on the 2012 performance. It is anticipated that net income for 2013 will approximate that of 2009. The Debtor will have sufficient cash flow from ongoing operations to sustain the debt service contained in the Plan. Attached hereto as Exhibit E and incorporated herein by that reference are the Comparison of Budget to Actual for May 2013

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

16

through October 2013, the Monthly Budget for May through July 2014, and a Forecasted Statement of Cash Receipts and Disbursements August 2013 through July 2014 (collectively the "Budget").

**ARTICLE XIII. FEASIBILITY OF DEBTOR'S PLAN, is amended in its entirety as follows:**

ARTICLE XIII

FEASIBILITY OF DEBTOR'S PLAN

Sharkey's Casino is a small local casino in Gardnerville, Nevada, catering to local patrons and patrons from the bordering communities in California, as well as some pass through traffic.  Debtor believes that the PLAN is feasible based upon the improved income generated from business operations over the past two (2) years, coupled with the restructuring of the Debtor's secured debt.  Additionally, Debtor has hired a more experienced General Manager, and since that time the food operation has seen steady improvement, and the slot machines have been upgraded and rearranged on the casino floor.   In spite of a slight decrease in gross receipts, Debtor has shown a significant increase in its operating income or earnings before interest, depreciation and amortization ("EBITDA") compared to 2012. Debtor has based its 2013/2014 projections on the 2012 actual performance.  Indeed, for the first seven (7) months of 2013, Debtor has exceeded 2012 actual EBITDA by 15%, with July 2012 reporting year to date EBITDA of $500,170 and July 2013 reporting year to date EBITDA of $575,210.    CMS International, the company that provides management services to the Debtor has agreed to defer its management fee of $6,000.00 per week in order to increase cash flow for the Debtor, until sufficient monies are available to pay same.  Exhibit E clearly shows the removal of payment of management fees to CMS through July 2014.   Based on current year earnings to date, the Debtor believes that the 2013 budgeted annual EBITDA of $1,012,600.00, is attainable.

Unless amended hereinabove, all other terms of the Debtor's First Amended Plan of Reorganization remain in full force and effect.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

17

1    WHEREFORE, THE HOLDER GROUP SHARKEY'S, LLC, as proponent of this Plan,

2  repeats its request for confirmation of this Plan pursuant to §§ 1129(a) and/or 1129(b) of the

3  Bankruptcy Code.

4    Respectfully submitted this 6th day of December, 2013.

5

6                                          STEPHEN R. HARRIS, ESQ.
                                           HARRIS LAW PRACTICE LLC
7

8                                          /s/ Stephen R. Harris

9                                          _____

10                                         Attorneys for Debtor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE,
LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511

18

## VERIFICATION

I, HAROLD D. HOLDER, SR, Manager of THE HOLDER GROUP SHARKEY'S, LLC, Debtor, declare under penalty of perjury that I have read the foregoing FIRST AMENDMENT TO DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION, and that the contents contained therein are true and correct to the best of my knowledge, information and belief.

DATED this _____ day of December, 2013.

_____
Harold D. Holder, Sr., Manager
THE HOLDER GROUP SHARKEY'S, LLC,
 Debtor

# EXHIBIT "A"

# EXHIBIT "A"

1   STEFANIE T. SHARP, ESQ.
    Nevada State Bar No. 8661
2   Robison, Belaustegui, Sharp & Low
    A Professional Corporation
3   71 Washington Street
    Reno, Nevada 89503
4   Telephone: (775) 329-3151
    Facsimile: (775) 329-7169
5   Email:    ssharp@rbsllaw.com

6   *Attorneys for Nevada State Bank*

7                    UNITED STATES BANKRUPTCY COURT

8                         DISTRICT OF NEVADA

9

10  In re:                              Case No.   13-50844-btb

11  THE HOLDER GROUP SHARKEY'S, LLC,    Chapter 11

12                                      **STIPULATION FOR TREATMENT OF**
                                        **CLAIMS OF NEVADA STATE BANK IN**
13                 Debtor.              **DEBTOR'S FIRST AMENDED PLAN OF**
                                        **REORGANIZATION**
14

15                                      Hearing Date: December 5, 2013
                                        Hearing Time:  2:00 p.m.
16                                      Set By: Dkt. 100

17

18

19

20

21          Debtor, The Holder Group Sharkey's, LLC ("Debtor"), by and through its counsel

22  Stephen R. Harris, Esq. of Harris Law Practice, LLC and Nevada State Bank ("NSB") by and

23  through its counsel Stefanie T. Sharp, Esq. of Robison, Belaustegui, Sharp & Low having

24  resolved their disputes regarding Debtor's First Amended Plan of Reorganization (the "Plan"),

25  Dkt. 89, hereby stipulate and agree as follows:

26  ///

27  ///

28  ///

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

                                        1

IT IS STIPULATED AND AGREED that the Plan shall be amended by this stipulation as follows:

1. Article V., TREATMENT OF CLASSES, Section 1A, is hereby deleted and replaced with the following:

"1A.    CLASS IA SECURED CLAIM [NEVADA STATE BANK]:  The Class IA secured Claim of NSB shall retain its existing security interest and the outstanding loan balance shall be recalculated using the outstanding principal balance plus accrued interest at the non-default rate of interest from the Petition Date to the Confirmation Date, plus reasonable attorney's fees and collection costs and late fees, less post-petition amounts paid to principal and interest by the Debtor ("Modified Loan Balance"). The Modified Loan Balance shall be paid in monthly payments of principal and interest at the rate of 5.25% per annum accruing after the Confirmation Date, calculated on a thirty (30) year amortization, commencing upon the 10th day of the month following the Confirmation Date, and continuing on the tenth day of each successive month for six (6) years thereafter, with the entire amount of Modified Loan Balance to be paid six (6) years after the Confirmation Date or upon sale of the Real Property, whichever occurs first in time. Any payment due shall be subject to a fifteen (15) day grace period to cure same. The Modified Loan Balance shall be deemed current as of the Confirmation Date and any Notice of Default shall be released and rescinded. Debtor believes the interest rate proposed herein is appropriate based on the decision rendered in In re Till, 301 F.3d 583,591 (2002), and has been applied by this Court in previous confirmation hearings in early 2013. Debtor shall provide evidence of payment of real property taxes and payment of insurance premiums to NSB within 10 days of paying same. Debtor shall maintain and provide proof of insurance naming NSB as an additional insured until such time as NSB is paid in full. Accordingly, the Class 1A secured claim of NSB is impaired."

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

2

2.      The treatment of NSB's Class 1B claim shall remain as set forth in the Plan, except that the Modified Loan Balance (as defined in Article V, Section 1B of the Plan) shall include late fees, if any. The Plan shall also provide that as evidenced by NSB's Proof of Claim associated with its Class 1B claim, Claim 5, no pre-petition late fees are due.

3.      The Plan is hereby amended to add the following section providing for the address for notices and payments to NSB and Debtor pursuant or related to the Plan:

<u>Addresses for Notices and Payments:</u>

All notices and payments sent to NSB pursuant, or related, to the Plan shall be directed to the following

    Nevada State Bank
    Attn: Michael Hanley, Senior Vice President
    400 N. Green Valley Pkwy, 2nd Floor
    Henderson, Nevada 89704
    Phone: (702) 589-2588
    Email: Michael.Hanley@nsbank.com

With Copy of Notices only to:

    Stefanie T. Sharp
    Robinson, Belaustegui Sharp and Low
    71 Washington Street
    Reno, Nevada 89503
    Phone: (775)329-3151
    Fax: (775) 329-7941
    Email: ssharp@rbsllaw.com

All notices sent to Debtor pursuant, or related, to the Plan shall be directed to the following:

    The Holder Group Sharkey's
    c/o Holder Hospitality Group, International, Inc.
    Attn: Kyla M. Bryson
    5355 Kietzke Lane, Suite 102
    Reno, Nevada 89511.
    Phone: (775) 825-7267
    Email: kbryson@hhgcasinos.com

///
///

With Copy of Notices Only to:

Stephen R. Harris, Esq.
Harris Law Practice LLC
6151 Lakeside Drive, Suite 2100
Reno, Nevada 89511
Phone: (775) 786-7600
Fax: (775) 786-7764
Email: steve@harrislawreno.com

IT IS FURTHER STIPULATED AND AGREED that the entry of an order approving this

Stipulation shall constitute NSB's vote accepting the Plan.

IT IS FURTHER STIPULATED AND AGREED that any order confirming the Plan shall

incorporate the modified treatment of NSB's claims and the other modifications to the Plan as

agreed to herein.

| ROBISON, BELAUSTEGUI, SHARP & LOW, a Professional Corporation | HARRIS LAW PRACTICE, LLC a Nevada Limited Liability Co. |
|---|---|
| By: /s/ Stefanie T. Sharp | By: |
| STEFANIE T. SHARP, ESQ. | STEPHEN R. HARRIS, ESQ. |
| 71 Washington Street | 6151 Lakeside Drive, Suite 2100 |
| Reno, Nevada 89503 | Reno, Nevada 89511 |
| Phone: (775) 329-3151 | Phone: (775) 786-7600 |
| *Attorneys for Nevada State Bank* | *Attorneys for Debtor* |

Dated: November 18, 2013              Dated: November 18, 2013

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

4

**CERTIFICATE OF SERVICE**

I served a true and correct copy of the within **STIPULATION FOR TREATMENT OF CLAIMS OF NEVDA STATE BANK IN DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION** on November 18, 2013, by the following means to the persons as listed below:

  X    Electronically pursuant to the Court's **ECF System** to:

AARON E DAVIS on behalf of Creditor US FOODS, INC
aaron.davis@bryancave.com, kat.flaherty@bryancave.com; brandy.mcmillion@bryancave.com; leslie.bayles@bryancave.com

STEPHEN R HARRIS on behalf of Debtor THE HOLDER GROUP SHARKEY'S, LLC
noticesbh&p@harrislawreno.com; hannah@harrislawreno.com; reception@harrislawreno.com; helena@harrislawreno.com; norma@harrislawreno.com; ellie@harrislawreno.com

KAARAN E. THOMAS on behalf of Creditor SEE HORSE I, LLC
kthomas@mcdonaldcarano.com, mmorton@mcdonaldcarano.com

AMY N. TIRRE on behalf of Creditor CITY NATIONAL BANK, N.A.
amy@amytirrelaw.com, admin@amytirrelaw.com

U.S. TRUSTEE - RN - 11
USTPRegion17.RE.ECF@usdoj.gov

RYAN J. WORKS on behalf of Creditor SEE HORSE I, LLC
rworks@mcdonaldcarano.com, kbarrett@mcdonaldcarano.com; bgrubb@mcdonaldcarano.com


        DATED:  November 18, 2013.


                                 /s/ Claudia Zaehringer
                                 CLAUDIA ZAEHRINGER

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

# EXHIBIT "B"

# EXHIBIT "B"

1  McDONALD CARANO WILSON LLP
   KAARAN E. THOMAS NV Bar No. 7193
2  RYAN J. WORKS, NV Bar No. 9224
   ANTHONY CARANO, NV Bar No. 11931
3  2300 West Sahara Avenue, Suite 1200
   Las Vegas, NV 89102
4  Telephone: (702) 873-4100
   Facsimile: (702) 873-9966
5  kthomas@mcdonaldcarano.com
   rworks@mcdonaldcarano.com
6  acarano@mcdonaldcarano.com

7  *Attorneys for See Horse I, LLC*

*Electronically filed* December ___4___, 2013

8            IN THE UNITED STATES BANKRUPTCY COURT

9                       DISTRICT OF NEVADA

10  In re                              Case No.: 13-50844-mkn
                                       Chapter 11
11  THE HOLDER GROUP SHARKEY'S,
    LLC,                               **STIPULATION FOR TREATMENT OF**
12                                     **CLAIMS OF SEE HORSE I, LLC IN**
              Debtor.                  **DEBTOR'S FIRST AMENDED PLAN OF**
13                                     **REORGANIZATION**
14                                     Hearing Date: December 19, 2013
15                                     Hearing Time: 11:00 a.m.
16

17         Debtor, The Holder Group Sharkey's, LLC ("Debtor"), by and through its counsel

18  Stephen R. Harris, Esq., of Harris Law Practice, LLC and See Horse I, LLC ("See Horse") by

19  and through its counsel Ryan J. Works, Esq. of McDonald Carano Wilson LLP having resolved

20  their dispute regarding Debtor's First Amended Plan of Reorganization (the "Plan"), [Docket

21  No. 89], hereby stipulate and agree as follows:

22         IT IS STIPULATED AND AGREED that the Plan shall be amended by this stipulation

23  as follows:

24         1.      <u>Agreement as to sums due to See Horse as successor lender:</u>   Debtor

25  acknowledges and accepts See Horse as the successor to the See Horse Predecessors, and

26  agrees to pay to See Horse, the adjusted total sum of See Horse's proofs of claims (Claims 10-

27  2 and 11-1) as filed in the action, adjusted and including non-default interest from the date of

28



1   default through the Confirmation Date, less post-petition payments, plus See Horse's

2   reasonable legal fees and costs through the date of confirmation. No late charges will be

3   assessed to the Debtor. The adjusted total sum of See Horse's proofs of claim shall be referred

4   to as the "Modified Loan Balance" and shall be paid as detailed hereinafter. Claim 11-1 is

5   subject to reconciliation and verification of the amounts owed by Debtor to See Horse.

6           2.      Terms of Repayment:  Debtor's obligation to pay the Modified Loan Balance to

7   See Horse shall continue to be secured by the deeds of trust and other pledges of real and

8   personal property presently securing the obligations under this loan. Debtor agrees to pay

9   monthly, self-amortizing payments based on the above Modified Loan Balance on a 30-year

10  amortization schedule to See Horse commencing on the fifteenth (15th) day of the month

11  following the month in which Debtor's Plan is confirmed. Interest on the Claim shall be paid

12  from the Confirmation Date at a rate equal to five and one-quarter percent (5.25%) annually as

13  part of the monthly payments. Provided that all monthly payments are made on a timely basis

14  without default, all sums remaining due on the Modified Loan Balance shall become fully due

15  and payable at the end of the seventy-second (72nd) month following the month in which the

16  Debtor's Plan is confirmed by the Court. Debtor's failure to pay any monthly payment due on

17  the Modified Loan Balance to See Horse within fifteen (15) calendar days following the date

18  upon which it is due or Debtor's failure or refusal to comply with any of the terms of this

19  Settlement Agreement during any period of time when any sum due on the Modified Loan

20  Balance remains unpaid shall constitute a material default of Debtor's obligations to See Horse

21  and may, at See Horse's discretion, constitute grounds for foreclosure on the collateral that

22  secures the Modified Loan Balance and implementation by See Horse of such other remedies

23  as may be lawful.

24          3.      Release of All Claims by Debtor, Holder, and Holder Group. On or before the

25  Confirmation Date, the Debtor, Holder, and Holder Group shall execute and deliver to See

26  Horse, in form and content acceptable to See Horse and Debtor, a full and complete release of

27  all claims and defenses Debtor, Holder, and/or the Holder Group may have against See Horse

28  and its Manager and Member, that may have arisen or may arise under any federal or State

McDONALD · CARANO · WILSON LLP
2100 WEST SAHARA AVENUE, SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

laws with regards to obligations owed by Debtor to See Horse. Debtor is not releasing the FDIC and/or See Horse's Predecessors.

4. <u>Agreement by Debtor to fund capital expenditures.</u> The Debtor agrees to expend a minimum of two hundred thousand dollars ($200,000) per calendar year (commencing January 2014) as capital expenditures on the Debtor's real and personal property, subject to the following terms and conditions:

a. The annual sum for capital expenditures shall be expended only on capital expenditures defined and determined by Generally Accepted Accounting Principles ("GAAP"); however, this amount does not include repair and maintenance expenditures. Authorized capital expenditures shall include, but is not limited to: the purchase of new and/ or reconditioned gaming devices from the major gaming device manufacturers/distributors (including but not limited to IGT, WMS, Aristocrat, or Bally Technologies, but shall not include any Holder related entity);

b. The funds for such capital expenditures shall be deposited by Debtor in a separate, segregated bank account which shall be dedicated solely to the retention of such funds, subject only to release upon capital expenditure disbursements. The funds to be allocated to such capital expenses shall be paid directly to the vendor or creditor providing the capital goods or, if not so paid and credited against this obligation, shall be paid into the segregated account at the following rate: $5,000 per month in January, February and March of each year; $15,000 per month in April and May of each year; $30,000 per month in June, July, August and September of each year; $15,000 in October of each year; and $10,000 per month in November and December of each year.

c. Funds paid to the capital expenditures bank account shall be made on or before the 15th day of each of the above months. Debtor's failure to pay any of the capital expenditures within fifteen (15) calendar days following the date upon



1    which it is due shall constitute a material default of Debtor's obligations to See

2    Horse.

3        d.  In the event the Debtor fails to fund the separate, segregated capital expenditure

4    bank account on the schedule set forth above, See Horse may proceed pursuant

5    to paragraph 9 and the Bankruptcy Court will retain no jurisdiction over such

6    monetary default;

7        e.  Debtor, Holder, and Holder Group agree that no sums shall be paid to Holder,

8    Holder Group or any affiliate thereof for management fees or otherwise, during

9    any period when the sums due to be expended for authorized capital

10    expenditures have not been so expended or accrued in the segregated bank

11    account set up for this purpose;

12        f.  Debtor, Holder and Holder Group agree that any capital expenditures made

13    from the $200,000 capital expenditures budget set forth above, and not made to

14    improve the collateral securing the See Horse obligations, shall be subject to the

15    consent of See Horse, which shall not be unreasonably withheld.

16        5.   Ratification of Personal Guarantees by Mr. and Mrs. Holder.  On or before the

17    confirmation date, Mr. and Mrs. Holder will execute and deliver to See Horse and Debtor, in

18    form and confent acceptable to See Horse and Mr. and Mrs. Holder, a re-affirmation and

19    ratification of their personal guarantees for repayment of all sums due to See Horse by Debtor.

20        6.   Agreement by Debtor that Bankruptcy Court has limited continuing jurisdiction

21    over disputes relating to Capital Expenditures only.  Debtor agrees that after the Plan goes into

22    effect on the Confirmation Date, the United States Bankruptcy Court shall have limited

23    continuing jurisdiction over Debtor's capital expenditures only.  The Bankruptcy Court shall

24    have no jurisdiction over any other disputes that may arise under the Plan of Reorganization or

25    this Settlement Agreement, with regard to the enforcement of See Horse's rights in the secured

26    property pledged as collateral for repayment of the sums due to See Horse, or in the event of a

27    monetary default of the Debtor's obligations to fund the separate, segregated capital

28    expenditure bank account pursuant to the schedule set forth in paragraph 4.

Page 4 of 7



7.      Agreement by Debtor regarding filing of future bankruptcy actions.  Debtor agrees that it will not seek or file any new or subsequent request for bankruptcy protection any time after the Confirmation Date and before the  Modified Loan Balance is fully paid and satisfied in full until no less than 90 days after all sums due as part of the  Modified Loan Balance are paid to See Horse.

8.      Debtor's Agreement to provide monthly financial reports to See Horse.  Debtor agrees that it will provide monthly financial reports to See Horse, in form and substance acceptable to See Horse and the Debtor, commencing at the end of the first full month of business operations after the Confirmation Date until the Modified Loan Balance is fully paid to See Horse.  The monthly financial reports shall include, but not be limited to, copies of all bank statements and reports maintained by Debtor, invoices for capital expenditures reports of operating revenues and expenses, and other financial information as may be reasonably requested by See Horse.  Monthly financial reports will be provided  to See Horse no later than the last business day in the month following the month being reported.

9.      Pending Notice of Default and Election to Sell to remain on title and in effect. Debtor agrees that the pending Notice of Default and Election to Sell previously recorded and given by See Horse with regard to the properties securing payment of the obligations owed by Debtor to See Horse shall remain on title and in full force and effect for a period of two (2) years following the Confirmation Date of the Plan.  Provided that Debtor makes all payments due to See Horse under this Settlement Agreement during the said two (2) year period,  Debtor shall be entitled to receive from See Horse a Rescission of the Notice of Default and Election to Sell.  In the event of a post-Confirmation default within two (2) years following the Confirmation Date, for which the Bankruptcy Court retains no jurisdiction, Debtor agrees that See Horse may immediately proceed to record a Notice of Sale as contemplated by NRS 107.080(4). Further, as part of this Settlement Agreement, Debtor agrees and stipulates that See Horse is and shall be entitled to relief from any automatic stay that may apply under the circumstances and to pursue any available remedies, including but not limited to foreclosure on the collateral which See Horse may file fifteen (15) days following any post-Confirmation

1    default (whenever occurring) under the Plan by Debtor, with Debtor being allowed the same

2    fifteen (15) day right to cure the same.  Debtor agrees that See Horse will not be required to

3    seek or obtain any further court order or approval to exercise its rights hereunder or in the

4    collateral, including foreclosure on the collateral, in the event of post-Confirmation default.

5    Following the recordation of the Notice of Sale and up to the date of the foreclosure sale, the

6    Debtor shall be allowed to pay the entire unpaid balance due to See Horse on the obligation.

7    Further, so long as Debtor is current in making all payments due to See Horse under this

8    Settlement Agreement, then See Horse shall not commence action against Mr. and Mrs. Holder

9    on their personal guarantees to See Horse.

10          10.    <u>Default Rate of Interest</u>.  In the event any post-Confirmation default remains

11   uncured by Debtor for a period in excess of fifteen (15) days, the interest rate due on the sums

12   remaining due on the Approved Claim shall revert to the default rate of interest allowed under

13   the terms of the Promissory Note retroactive to the Petition Date.

14          11.    <u>Information required by State Gaming Control Board.</u>  See Horse agrees that it

15   will provide directly to the State Gaming Control Board on a confidential basis any

16   information and documents that may be required by the State Gaming Control Board in

17   connection with the loan which it acquired from Umpqua Bank with regard to the Debtor and

18   its properties.

19          12.    <u>Ballot Acceptance.</u>  After all parties hereto have executed this Stipulation, then

20   See Horse 1, LLC, agrees to vote to accept the Debtor's First Amended Plan of Reorganization

21   [Docket No. 89], as amended herein, into which the terms and conditions of this Stipulation

22   will be incorporated by a First Amendment to the Debtor's First Amended Plan of

23   Reorganization.

24          IT IS FURTHER STIPULATED AND AGREED that any order confirming the Plan

25   shall incorporate the modified treatment of See Horse's claims and the other modifications to

26   the Plan as agreed to herein.

27

28



1

2    Dated this _30th_ day of November, 2013.

3    McDONALD CARANO WILSON LLP                HARRIS LAW PRACTICE LLC

4    By_____               By: _____
5    RYAN J. WORKS, NV Bar No. 9224            STEPHEN R. HARRIS, Esq.
2300 West Sahara Avenue, Suite 1200      6151 Lakeside Dr., Suite 2100
6    Las Vegas, NV 89102                      Reno, NV 89511
rworks@mcdonaldcarano.com                Phone: (775) 786-7600
7    *Attorneys for See Horse I, LLC*          Fax: (775) 786-7764
steve@harrislawreno.com
8                                              *Attorneys for Debtor*

9    THE HOLDER GROUP SHARKEY'S,
LLC
10
_____          _____
11                                              HAROLD D. HOLDER, an individual
HAROLD D. HOLDER, SR., Manager
12

13    SEE HORSE I, LLC

14

15   _____
MICHAEL E. PEGRAM, Manager
16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "C"

# EXHIBIT "C"

LAW OFFICES OF AMY N. TIRRE,
A Professional Corporation
AMY N. TIRRE, ESQ. #6523
3715 Lakeside Drive, Suite A
Reno, NV 89509
Telephone: (775) 828-0909
Facsimile: (775) 828-0914
E-mail: amy@amytirrelaw.com

E-Filed:   November 22, 2013

Attorneys for City National Bank, N.A.

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>THE HOLDER GROUP SHARKEY'S, LLC,<br><br>Debtor. | Case No. BK-N-13-50844-BTB<br><br>Chapter 11<br><br>**STIPULATION FOR TREATMENT OF CITY NATIONAL BANK'S CLASS 3A AND 3B SECURED CLAIMS UNDER DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**<br><br>Hearing Date:   December 5, 2013<br>Hearing Time:  2:00 p.m.<br>Est. Time: |

City National Bank, N.A. ("CNB"), by and through its counsel, Law Offices of Amy N. Tirre, A Professional Corporation, and Debtor The Holder Group Sharkey, LLC's ("Debtor"), by and through counsel, Harris Law Practice, LLC, hereby stipulate and agree that the treatment of CNB's secured claims as set forth in Class 3A and Class 3B of Debtor's First Amended Plan of Reorganization filed on October 8, 2013 as Docket No. 89 is amended as follows:

CLASS 3A SECURED CLAIM [CITY NATIONAL BANK]:  The Class 3A Claim (aka Loan 728) and the Class 3B Claim (aka Loan 698) shall be restructured as one loan in the amount of the outstanding loan balances ($105,903.92 for Class 3A and $106,020.99 for Class 3B for a total of $211,924.91), plus post-petition attorney's fees and costs through the Confirmation Date, plus accrued interest at the non-default rate of interest, which is 7% under the loans documents, from the

1

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

Petition Date to the Confirmation Date, less post-petition payments paid to principal and interest by Debtor ("Modified Loan Balance"), which restructured loan as provided herein and the performance thereof shall retain the existing security interest and deed of trust in first-priority position. With respect to the Class 3A Secured Claim, the deed of trust was recorded as Document No. 0576831 on May 9, 2003 in the official records of the Douglas County Recorder's Office with respect to the real property with APN 1320-33-401-017.

The Modified Loan Balance shall be paid in monthly payments of principal and interest at the rate of 5.25% per annum accruing after the Confirmation Date, calculated on a twenty (20) year amortization, commencing upon the fifth day of each month following the Confirmation Date, and continuing on the fifth day of each successive month for four (4) years thereafter, with the entire amount of the Modified Loan Balance to be paid four (4) years after the Confirmation Date or upon a sale of either of the real properties, whichever occurs first in time. Any payment shall be subject to a fifteen (15) day grace period to cure the same. The Modified Loan Balance shall be deemed current as of the Confirmation Date and any Notice of Default shall be released and rescinded. Debtor shall provide evidence of payment of real property taxes and insurance premiums to City National Bank within ten (10) days of paying the same. Debtor shall maintain and provide proof of insurance naming City National Bank as an additional insured until such time as City National Bank is paid in full. The loan documents shall remain in full force and effect except as modified herein. If necessary, City National Bank and Debtor shall timely execute any and all documents to effectuate the treatment provided herein. Accordingly, the Class 3A claim of City National Bank is impaired.

CLASS 3B SECURED CLAIM [CITY NATIONAL BANK]: The Class 3B Claim (aka Loan 698) and the Class 3A Claim (aka Loan 728) shall be restructured as one loan in the amount of the outstanding loan balances ($105,903.92 for Class 3A and $106,020.99 for Class 3B for a total of $211,924.91) plus post-petition attorney's fees and costs through the Confirmation Date, plus

2

accrued interest at the non-default rate of interest, which is 7% under the loans documents, from the Petition Date to the Confirmation Date, less post-petition payments paid to principal and interest by Debtor ("Modified Loan Balance"), which restructured loan as provided herein and the performance thereof shall retain the existing security interests and deeds of trust in first-priority position. With respect to the Class 3B Claim, the deed of trust was recorded as Document No. 0576831 on May 12, 2003 in the official records of the Douglas County Recorder's Office with respect to the real property with APN 1320-33-401-033.

The Modified Loan Balance shall be paid in monthly payments of principal and interest at the rate of 5.25% per annum accruing after the Confirmation Date, calculated on a twenty (20) year amortization, commencing upon the fifth day of each month following the Confirmation Date, and continuing on the fifth day of each successive month for four (4) years thereafter, with the entire amount of the Modified Loan Balance to be paid four (4) years after the Confirmation Date or upon a sale of either of the real properties, whichever occurs first in time. Any payment shall be subject to a fifteen (15) day grace period to cure the same. The Modified Loan Balance shall be deemed current as of the Confirmation Date and any Notice of Default shall be released and rescinded. Debtor shall provide evidence of payment of real property taxes and insurance premiums to City National Bank within ten (10) days of paying the same. Debtor shall maintain and provide proof of insurance naming City National Bank as an additional insured until such time as City National Bank is paid in full. The loan documents shall remain in full force and effect except as modified herein. If necessary, City National Bank and Debtor shall timely execute any and all documents to effectuate the treatment provided herein. Accordingly, the Class 3B claim of City National Bank is impaired.

For the avoidance of any doubt, the treatment provided herein for the Class 3A and Class 3B Claims require one monthly payment on the restructured loan. The foregoing amended treatment of the Class 3A and Class 3B Claims shall be incorporated into an order confirming Debtor's First

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

1  Amended Plan of Reorganization.

2      Dated: November 22, 2013            Dated:  November 22, 2013

3  LAW OFFICES OF AMY N. TIRRE,        HARRIS LAW PRACTICE, LLC
4  A Professional Corporation

5

6  By: /s/ Amy N. Tirre                By:
7      AMY N. TIRRE, ESQ.                  STEPHEN R. HARRIS, ESQ.

8  *Counsel for City National Bank, N.A.*   *Counsel to Debtor The Holder Group Sharkey's,*
   *LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

**CERTIFICATE OF SERVICE**

Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of Law Offices of Amy N. Tirre, that I am over the age of 18 and not a party to the above-referenced case, and that on November 22, 2013 I filed and served the **STIPULATION FOR TREATMENT OF CITY NATIONAL BANK'S CLASS 3A AND 3B SECURED CLAIMS UNDER DEBTOR'S PLAN OF REORGANIZATION** as indicated:

__X__    **BY NOTICE OF ELECTRONIC FILING**: through Electronic Case Filing System of the United States Bankruptcy Court, District of Nevada, to the individuals and/or entities at their email addresses as set forth below:

- AARON E DAVIS    aaron.davis@bryancave.com; kat.flaherty@bryancave.com; brandy.mcmillion@bryancave.com;leslie.bayles@bryancave.com
- STEPHEN R HARRIS  noticesbh&p@harrislawreno.com; hannah@harrislawreno.com; reception@harrislawreno.com; helena@harrislawreno.com; norma@harrislawreno.com; ellie@harrislawreno.com
- JAMES A KOHL    jak@h2law.com, sgeorge@howardandhoward.com
- STEFANIE T. SHARP    ssharp@rbsllaw.com, btaylor@rbsllaw.com
- KAARAN E. THOMAS    kthomas@mcdonaldcarano.com, mmorton@mcdonaldcarano.com
- AMY N. TIRRE    amy@amytirrelaw.com, admin@amytirrelaw.com
- U.S. TRUSTEE - RN - 11    USTPRegion17.RE.ECF@usdoj.gov
- RYAN J. WORKS    rworks@mcdonaldcarano.com, kbarrett@mcdonaldcarano.com,bgrubb@mcdonaldcarano.com

_____    **BY HAND DELIVERY VIA COURIER**: by causing hand delivery of the Document listed above via Legal Express to the persons at the addresses set forth below.

_____    **BY MAIL**: by placing the document listed above in a sealed envelope with Postage thereon fully prepaid in the United States Mail at Reno, Nevada, and addressed as set forth below. I am readily familiar with my office's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on 22 November 2013, with postage thereon fully prepaid in the ordinary course of business.

DATED November 22, 2013.

_____/s/ Genevieve DeLucchi_____
An Employee of Law Offices of Amy N. Tirre, APC

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 823-0909 Telephone
(775) 823-0914 Facsimile
E-mail: amy@amytirrelaw.com

# EXHIBIT "D"

# EXHIBIT "D"

1  STEPHEN R. HARRIS, ESQ.
   Nevada Bar No. 001463
2  HARRIS LAW PRACTICE LLC
3  6151 Lakeside Drive, Suite 2100
   Reno, Nevada 89511
4  Telephone: (775) 786-7600
   E-Mail: steve@harrislawreno.com
5  Attorneys for Debtor

6                  UNITED STATES BANKRUPTCY COURT

7                    FOR THE DISTRICT OF NEVADA

8                            * * * * *

9

10  IN RE:                              Case No. 13-50844-btb

11  THE HOLDER GROUP SHARKEY'S, LLC,    (Chapter 11)

12                                      STIPULATION FOR TREATMENT OF
                                        GENERAL UNSECURED CLAIM OF
13                                      THE MILOS SHARKEY BEGOVICH
                        Debtor.         LIVING TRUST DTD 5/2/02
14

15  _____/   Hearing Date: December 19, 2013
                                        Hearing Time: 11:00 a.m.
16

17      THE HOLDER GROUP SHARKEY'S, LLC, a Nevada limited liability company,

18  Debtor and Debtor-in-Possession herein ("Debtor"), by and through its attorney STEPHEN R.

19  HARRIS, ESQ., of HARRIS LAW PRACTICE LLC, and THE MILOS SHARKEY

20  BEGOVICH LIVING TRUST DTD 5/2/02 ("Begovich Trust"), by and through its attorney

21  ROBERT G. BERRY, ESQ., 3701 Fairview Road, Reno, Nevada 89511 hereby stipulate and

22  agree that the treatment of the Begovich Trust's general unsecured claim as now set forth in

23  Class 5 of the Debtor's First Amended Plan of Reorganization filed on October 8, 2013, as

24  Docket No. 89, shall be amended as follows:

25

26      5. CLASS 5 CLAIMS [ALLOWED GENERAL UNSECURED CREDITORS]:

27  The Class 5 Allowed General Unsecured Creditors, shall be paid 100% of their allowed claims

28  by the Debtor as follows:

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

                    1

1        1.     The Class 5 non-insider allowed general unsecured claims totaling $41,388.18 shall be paid in full prorata within two (2) years of the Confirmation Date in monthly payments of principal and interest at the rate of 5.25% per annum accruing after the Confirmation Date, calculated on a two (2) year amortization until paid in full;

2.     The general unsecured claim of the Begovich Trust is deemed an allowed claim for $700,000.00, not the Proof of Claim amount of $760,000.00, and shall be payable monthly at zero percent interest pursuant to the terms of the parties' original promissory note, with monthly payments to be amortized over a thirty (30) year period, and to be paid in full eight (8) years following the Confirmation Date, with monthly payments of $1,944.44 each to commence January 15, 2014, and continue on the 15th day of each successive month thereafter, with a 15 day grace period. Payments shall be made payable to the Milos Sharkey Begovich Living Trust and mailed in care of Robert G. Berry, 3710 Fairview Road, Reno, NV 89511. Further, upon confirmation, the Trustees of the Begovich Trust agree to dismiss the breach of contract complaint now pending in the Ninth Judicial District Court in and for the County of Douglas, State of Nevada, case no. 13-cv0063, without prejudice, but with the condition that the civil case may only be recommenced upon a post-petition default by the Debtor; and

3.     The Class 5 "insider" allowed general unsecured claims of the Debtor shall be paid only after the Class 5 "non-insider" allowed general unsecured claims and the Class 5 claim of the Begovich Trust are paid in full.

Accordingly, the Class 5 General Unsecured Claims are impaired under the Plan.

Respectfully submitted this 27th day of November, 2013.

| | |
|---|---|
| STEPHEN R. HARRIS, ESQ. | ROBERT G. BERRY, ESQ., |
| HARRIS LAW PRACTICE LLC | |
| /s/ Stephen R. Harris | /s/ Robert G. Berry |
| _____ | _____ |
| Attorneys for Debtor | Attorney for Milos Sharkey Begovich Trust |

THE HOLDER GROUP SHARKEY'S LLC

By: _____

Harold D. Holder, Sr., Manager

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

2

# EXHIBIT "E"

# EXHIBIT "E"

**Sharkey's**
**Comparison of Actual to Budget**
**For the Months Ended May 2013 Through October 2013**

| | May-13 Actual | May-13 Budgeted | May-13 Variance | Jun-13 Actual | Jun-13 Budgeted | Jun-13 Variance | Jul-13 Actual | Jul-13 Budgeted | Jul-13 Variance | Aug-13 Actual | Aug-13 Budgeted | Aug-13 Variance | Sep-13 Actual | Sep-13 Budgeted | Sep-13 Variance | Oct-13 Actual | Oct-13 Budgeted | Oct-13 Variance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Net Revenues | 268,675 | 271,000 | (2,325) | 269,349 | 274,000 | (4,651) | 256,028 | 255,000 | 1,028 | 266,030 | 287,000 | (20,970) | 268,763 | 268,200 | 563 | 265,798 | 305,000 | (39,202) |
| Cost of Sales | | | | | | | | | | | | | | | | | | |
| Food | 33,966 | 36,070 | (2,104) | 28,573 | 36,000 | (7,427) | 34,197 | 35,000 | (803) | 36,718 | 38,000 | (1,283) | 30,583 | 32,000 | (1,418) | 37,224 | 36,000 | (1,224) |
| Bar | 8,886 | 9,543 | (657) | 10,635 | 8,050 | 2,585 | 10,737 | 8,200 | 2,537 | 10,558 | 8,800 | 1,758 | 12,093 | 11,200 | 893 | 12,146 | 11,000 | (1,146) |
| Total Cost of Goods Sold | 42,852 | 45,613 | (2,761) | 39,208 | 44,050 | (4,842) | 44,934 | 43,200 | 1,734 | 47,276 | 46,800 | 476 | 42,675 | 43,200 | (525) | 49,369 | 47,000 | (2,369) |
| Gross Profit | 225,823 | 225,387 | 436 | 230,141 | 229,950 | 191 | 211,094 | 211,800 | (706) | 218,754 | 240,200 | (21,446) | 226,087 | 225,000 | 1,088 | 216,428 | 258,000 | (36,833) |
| Operating Expenses: | | | | | | | | | | | | | | | | | | |
| Payroll expense | 106,972 | 107,100 | (128) | 98,796 | 98,949 | (153) | 104,566 | 98,571 | 5,995 | 101,650 | 99,429 | 2,221 | 98,376 | 87,429 | 10,947 | 104,720 | 100,343 | (4,377) |
| Taxes & licenses | (14,334) | 19,931 | (34,265) | 13,292 | 22,478 | (9,186) | 12,015 | 18,800 | (6,785) | 2,346 | 19,300 | (16,954) | 13,671 | 19,300 | (5,629) | 12,360 | 19,300 | 6,940 |
| Insurance | 5,995 | 4,950 | 1,045 | 3,111 | 8,250 | (5,139) | 5,263 | 6,600 | (1,337) | 4,757 | 8,250 | (3,493) | 4,108 | 7,719 | (3,611) | 2,295 | 7,719 | 5,424 |
| Utilities | 9,553 | 10,824 | (1,271) | 10,285 | 11,000 | (715) | 11,443 | 11,775 | (332) | 11,438 | 10,075 | 1,363 | 11,144 | 11,775 | (631) | 9,378 | 12,475 | 3,097 |
| Leasing & rental expense | 1,248 | 769 | 479 | 1,319 | 769 | 550 | 1,242 | 769 | 473 | 1,088 | 769 | 319 | 1,088 | 769 | 319 | 1,242 | 769 | (473) |
| Advertising & promotion | 2,708 | 6,166 | (3,458) | (362) | 5,000 | (5,362) | 886 | 5,000 | (4,114) | 2,986 | 7,000 | (4,014) | 2,935 | 3,500 | (565) | 7,282 | 7,000 | (282) |
| Telephone | 989 | 1,385 | (396) | 438 | 949 | (511) | 449 | 949 | (500) | 448 | 949 | (501) | 451 | 949 | (498) | 443 | 949 | 506 |
| Entertainment | 2,500 | 1,700 | 800 | 1,900 | 2,500 | (600) | 1,670 | 2,000 | (330) | 500 | 2,500 | (2,000) | 25 | 2,000 | (1,975) | 200 | 2,500 | 2,300 |
| Laundry & uniforms | 1,316 | 1,500 | (184) | 1,552 | 1,500 | 52 | 1,727 | 2,000 | (273) | 1,079 | 2,000 | (921) | 848 | 2,000 | (1,152) | 1,314 | 2,000 | 686 |
| Dues and subscriptions | 188 | 300 | (112) | 304 | 300 | 4 | (1,556) | 300 | (1,856) | 160 | 300 | (140) | 160 | 300 | (140) | 160 | 300 | 140 |
| Postage & freight | 1 | 50 | (49) | 0 | 50 | (50) | 0 | 50 | (50) | 46 | 50 | (4) | 0 | 50 | (50) | 20 | 50 | 30 |
| Repairs & maintenance | 2,589 | 3,000 | (411) | 2,706 | 3,000 | (294) | 2,761 | 3,000 | (239) | 1,763 | 3,000 | (1,237) | 2,001 | 3,000 | (999) | 1,822 | 3,000 | 1,178 |
| Supplies | 3,111 | 700 | 2,411 | 2,535 | 700 | 1,835 | 666 | 700 | (34) | 1,218 | 700 | 518 | 1,262 | 700 | 562 | 573 | 700 | 127 |
| Travel, meals & entertainment | 0 | 500 | (500) | 0 | 500 | (500) | 0 | 500 | (500) | 0 | 500 | (500) | 0 | 500 | (500) | 0 | 500 | 500 |
| Auto expense | 347 | 250 | 97 | 75 | 250 | (175) | 262 | 250 | 12 | 0 | 250 | (250) | 70 | 250 | (180) | 138 | 250 | 112 |
| Other | 3,145 | 2,186 | 959 | 2,776 | 4,050 | (1,274) | 2,601 | 3,690 | (1,089) | 5,138 | 4,600 | 538 | 6,742 | 4,920 | 1,822 | 3,168 | 4,650 | 1,482 |
| Total Operating Expenses | 126,328 | 159,311 | (32,983) | 138,727 | 160,245 | (21,518) | 143,995 | 154,955 | (10,960) | 134,617 | 159,672 | (25,056) | 142,881 | 145,161 | (2,280) | 145,115 | 162,505 | 17,390 |
| Operating Income (EBITDA) | 99,495 | 66,076 | 33,419 | 91,414 | 69,705 | 21,709 | 67,099 | 56,845 | 10,254 | 84,137 | 80,528 | 3,610 | 83,206 | 79,839 | 3,368 | 71,313 | 95,495 | (24,182) |

Sharkey's
Budgeted Profit & Loss Statement
For the Months Ended May 1, 2013 through July 31, 2014
Prepared Based upon the Accrual Basis of Accounting

| | May-13 | Jun-13 | Jul-13 | Aug-13 | Sep-13 | Oct-13 | Nov-13 | Dec-13 | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # Weeks | 5 | 4 | 5 | 4 | 4 | 4 | 5 | 4 | 5 | 4 | 4 | 4 | 5 | 4 | 5 |
| Net Revenues | 271,000 | 274,000 | 255,000 | 287,000 | 268,200 | 305,000 | 292,700 | 269,200 | 266,800 | 258,500 | 303,000 | 254,000 | 268,700 | 269,000 | 256,000 |
| **Cost of Sales** | | | | | | | | | | | | | | | |
| Food | 36,070 | 36,000 | 35,000 | 38,000 | 32,000 | 36,000 | 30,900 | 30,400 | 30,400 | 27,900 | 30,400 | 33,900 | 35,900 | 30,400 | 31,200 |
| Bar | 9,543 | 8,050 | 8,200 | 8,800 | 11,200 | 11,000 | 8,800 | 12,500 | 8,500 | 8,800 | 10,900 | 11,800 | 9,300 | 10,900 | 10,600 |
| Total Cost of Goods Sold | 45,613 | 44,050 | 43,200 | 46,800 | 43,200 | 47,000 | 39,700 | 42,900 | 38,900 | 36,700 | 41,300 | 45,700 | 45,200 | 41,300 | 41,800 |
| Gross Profit | 225,387 | 229,950 | 211,800 | 240,200 | 235,000 | 258,000 | 253,000 | 226,300 | 227,900 | 221,800 | 261,700 | 208,300 | 223,500 | 227,700 | 214,200 |
| **Operating Expenses:** | | | | | | | | | | | | | | | |
| Payroll expense | 107,100 | 98,949 | 98,571 | 99,429 | 87,429 | 100,343 | 99,000 | 99,000 | 99,000 | 99,000 | 99,000 | 99,000 | 99,000 | 96,000 | 99,000 |
| Taxes & licenses | 19,931 | 22,478 | 18,800 | 19,300 | 19,300 | 19,300 | 20,050 | 20060 | 20060 | 20060 | 20060 | 20060 | 20060 | 20060 | 20060 |
| Insurance | 4,950 | 8,250 | 6,600 | 8,250 | 7,219 | 7,219 | 2,295 | 2,295 | 2,295 | 5,263 | 6,531 | 5,263 | 9,651 | 5,263 | 5,263 |
| Utilities | 10,824 | 11,000 | 11,775 | 10,075 | 11,775 | 12,075 | 10,000 | 10000 | 13000 | 10000 | 9,500 | 9,500 | 9,500 | 10500 | 11,500 |
| Leasing & rental expense | 769 | 769 | 769 | 769 | 769 | 769 | 1,029 | 1,029 | 1,029 | 1,029 | 1,029 | 1,029 | 1,029 | 1,029 | 1,029 |
| Advertising & promotion | 4,166 | 5,000 | 5,000 | 7,000 | 3,500 | 7,000 | 2,500 | 2000 | 2500 | 2000 | 2000 | 2000 | 2000 | 2000 | 2500 |
| Telephone | 1,385 | 949 | 949 | 949 | 949 | 769 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 |
| Entertainment | 1,700 | 2,500 | 2,000 | 2,500 | 2,500 | 2,500 | 1,000 | 2000 | 2500 | 2000 | 2000 | 2000 | 2000 | 2000 | 2500 |
| Laundry & uniforms | 1,500 | 1,500 | 2,000 | 2,000 | 2,000 | 2,000 | 1,578 | 1,578 | 1,578 | 1,578 | 1,578 | 1,578 | 1,578 | 1,578 | 1,578 |
| Dues and subscriptions | 300 | 300 | 300 | 300 | 300 | 300 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Postage & freight | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Repairs & maintenance | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 2,981 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Supplies | 700 | 700 | 500 | 700 | 700 | 700 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 |
| Travel, meals & entertainment | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Auto expense | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Other | 2,186 | 4,050 | 3,690 | 4,600 | 4,800 | 4,650 | 4,600 | 4,600 | 4,600 | 1,600 | 4,600 | 4,600 | 4,600 | 3,461 | 4,600 |
| Total Operating Expenses | 159,311 | 160,245 | 154,955 | 159,672 | 145,161 | 162,565 | 148,612 | 149,112 | 151,112 | 148,061 | 152,848 | 151,580 | 155,966 | 148,461 | 154,580 |
| Operating Income (EBITDA) | 66,076 | 69,705 | 56,845 | 80,528 | 79,839 | 95,495 | 104,388 | 77,188 | 76,788 | 73,739 | 108,852 | 56,720 | 67,532 | 79,239 | 59,620 |

## Owner's Adjustments to Arrive at EBITDA:

| | May-13 | Jun-13 | Jul-13 | Aug-13 | Sep-13 | Oct-13 | Nov-13 | Dec-13 | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Depreciation | 13,769 | 13,769 | 13,769 | 13,769 | 13,769 | 13,769 | 14,190 | 14,190 | 14,190 | 14,190 | 14,190 | 14,190 | 14,190 | 14,190 | 14,190 |
| Interest[1] | 31,519 | 31,811 | 31,448 | 31,738 | 31,701 | 31,341 | 28,174 | 28,142 | 28,110 | 28,079 | 28,047 | 28,014 | 27,982 | 27,950 | 27,917 |
| Amortization | 5,167 | 5,167 | 5,167 | 5,167 | 1,925 | 1,925 | 10,651 | 10,651 | 10,651 | 10,651 | 10,651 | 10,651 | 10,651 | 10,651 | 10,651 |
| Slot participation/splits | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 | 11,974 |
| Corporate management fees | 12,000 | 24,000 | 30,000 | 24,000 | 3,000 | - | - | - | - | - | - | - | - | - | - |
| Non-recurring fees[2] | 16,667 | 16,667 | 16,657 | 21,542 | 16,666 | 21,541 | - | - | 4,875 | - | - | 4,875 | - | - | 4,875 |
| Excess Employee Benefits[3] | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,627 | 3,627 | 3,627 | 3,627 | 3,627 | 3,627 | 3,627 | 3,627 | 3,627 |

[1] All loan payments are based upon the Cash Collateral Motion through October 2013. In Nov 2013 loans restructured to 5.25% interest with 30 YR term and various amortization years included in these amounts.

[2] Bankruptcy legal fees & US Trustee Payments.

[3] Employee meals.

Statement of Cash Receipts Disbursements
For the Months August 2013 Through July 2014

**FORECAST**

Cash Receipts
- Fees/Dues Collected
- Cash Received from Sale
- Interest Received
- Rent on Lge
- Fees/Fines Share Letters
- Payments on Other Obligations
- Capital Contributions

Total Cash Receipts

Cash Disbursements
- Payments for Inventory
- Selling
- Administrative A/G Trustee
- Capital Expenditures
- Principal Payments on Debt
- Interest Paid
- Tax During
- Personal Property
- Real Property
- Amount Paid to
- Owner(s)/Officer(s)
- Salaries
- Draws
- Commissions/Royalties
- Expense Reimbursements
- Other
- Salaries/Commissions (less
  employee withholding)
- Employee Withholding
- Employer Payroll Taxes
- Real Property Taxes
- Gross Receipts Taxes
- Other Cash Outflows:

Other Operating Expenses

Total Cash Disbursements

Net Increase/(Decrease) in Cash

Cash Balance, Beginning of Period

Cash Balance, End of Period